[L.A. No. 30562. Sept. 14, 1979.]

SEARS, ROEBUCK & COMPANY, Plaintiff and Respondent, v.
SAN DIEGO COUNTY DISTRICT COUNCIL OF CARPENTERS,
Defendant and Appellant.

318

## COUNSEL

Donald W. Zellmann, Jennifer T. Messersmith, Jerry J. Williams, Brundage & Zellmann, Brundage, Williams & Zellmann, Fred H. Altshuler, Stephen P. Berson, J. Albert Woll, Marsha S. Berzon, Laurence Gold and John S. Adler for Defendant and Appellant.

P. H. McCarthy, Jr., William R. Shepard and McCarthy, Johnson & Miller as Amici Curiae on behalf of Defendant and Appellant.

H. Warren Siegel, Ann Kane Smith, Jones, Hall & Arky, Lawrence M. Cohen, Martin K. Denis, Howard M. Blassman, Fox & Grove, Gray, Cary, Ames & Frye and David B. Geerdes for Plaintiff and Respondent.

Adrian A. Kragen, Jeffrey S. Goldman, Meredith K. Wellington and Lederer, Fox & Grove as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**TOBRINER, J.**—Defendant San Diego County District Council of Carpenters (union) appeals from an order granting a preliminary injunction restraining the union, its officers, agents, representatives and members, from picketing on the property of plaintiff Sears, Roebuck & Company (Sears). In an earlier opinion (*Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1976) 17 Cal.3d 893 [132 Cal.Rptr. 443, 553 P.2d 603]), we held that the jurisdiction of the superior

court to issue the injunction was preempted by the National Labor Relations Act (29 U.S.C. § 151 et seq.). The United States Supreme Court granted certiorari, reversed our decision on the issue of preemption, and remanded the cause to this court for resolution of the remaining legal issues. (*Sears, Roebuck & Co.* v. *Carpenters* (1978) 436 U.S. 180 [56 L.Ed.2d 209, 98 S.Ct. 1745].)

While this case was pending on appeal, the Legislature enacted the Moscone Act, Code of Civil Procedure section 527.3, which limits the equity jurisdiction of superior courts in granting injunctions in cases involving labor disputes. The injunction issued by the superior court here banned picketing on the privately owned sidewalks surrounding the Sears Chula Vista store even though the picketing was peaceful and did not interfere with access to the store. ▇ As we shall explain, the Moscone Act, interpreted in light of prior decisions of this court, declares such peaceful picketing to be legal and thus not subject to injunction. Rejecting Sears' contention that it enjoys a federally protected right to enjoin peaceful picketing on property it has opened to public use, we conclude that the trial court lacks jurisdiction to enjoin the picketing at issue here.

We described the factual setting of this case in our previous opinion at 17 Cal.3d 893, 895-896; we summarize that description briefly here. The Sears Chula Vista store sits in the center of a large parking area. To protest Sears' refusal to agree either to have carpentry work performed by workers dispatched by the union or to adhere to the union's master agreement for use of carpenters, the union posted pickets on the privately owned sidewalks immediately surrounding the Sears store. "It is not disputed that at all times while they were on Sears' property the pickets conducted themselves in a peaceful and orderly fashion. The record discloses no acts of violence, threats of violence, or obstruction of traffic." (17 Cal.3d at p. 896.)

When the union rejected Sears' request that the pickets be removed from Sears' property, the store sued and obtained a temporary restraining order. The union protested the order on the ground that although the injunction permitted picketing on the public sidewalks, 220 to 490 feet away from the store, such picketing was too distant for customers to read the picket's signs. Nevertheless the superior court, on November 21, 1973, issued a preliminary injunction restraining the union, its officers, agents, representatives and members, from "carrying on picketing on the plaintiff's property."

On appeal, we reversed the order of the superior court. Finding that the picketing was both arguably protected activity under section 7 of the National Labor Relations Act, and arguably prohibited activity under section 8 of that act, we held that under *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773] the National Labor Relations Board had primary jurisdiction over the controversy.

. The United States Supreme Court granted certiorari. Limiting the *Garmon* doctrine, the high court indicated that the fact that conduct is arguably protected or prohibited by the National Labor Relations Act may not be sufficient to establish the primary jurisdiction of the NLRB unless the party harmed by that conduct enjoys a suitable means of presenting the issue to the board. (*Sears, Roebuck & Co.* v. *Carpenters, supra*, 436 U.S. 180, 198, 207 [56 L.Ed.2d 209, 226, 231].) Because the only issue Sears could frame before the board turns on whether the union engaged in improper recognitional picketing, a narrow issue not decisive of Sears' right to enjoin the picketing as a trespass, the court concluded that we had erred in holding the NLRB had primary jurisdiction over the controversy.

The Supreme Court remanded the cause to us for further consideration. Its opinion identified one issue for resolution here; in footnote 8, the Supreme Court's opinion observes that: "The State Superior Court and Court of Appeal concluded that the Union's activity violated state law. Because it concluded that the state courts lacked jurisdiction to entertain the state trespass claim, the California Supreme Court did not address the merits of the lower court rulings. The Union contends that those rulings were incorrect. Though we regard the state-law issue as foreclosed in this Court, there is of course nothing in our decision on the pre-emption issue which bars consideration of the Union's arguments by the California Supreme Court on remand." (436 U.S. at p. 185 [56 L.Ed.2d at p. 218].)[1]

By supplemental brief, the union calls to our attention a second issue. The Moscone Act (Code Civ. Proc., § 527.3), enacted in 1975, establishes the legality of certain labor practices and limits the equity jurisdiction of the superior court to enjoin such practices. ■ Although the Legisla-

---

[1] The Supreme Court decision also left unresolved the issue whether the union's activity was not merely arguably protected by federal law, as we held in the first *Sears* opinion, but in fact protected by that law. If in fact the union's activity was protected, then clearly state courts cannot enjoin it. The union, however, in its supplemental brief, expressly disclaims any intention to contend here that its picketing was protected conduct under federal labor law.

ture passed this act subsequent to the grant of the preliminary injunction in the case at bar, the parties recognize that "relief by injunction operates in futuro, and the right to it must be determined as of the date of decision by an appellate court." (*American Fruit Growers* v. *Parker* (1943) 22 Cal.2d 513, 515 [140 P.2d 23]; see *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 306 [138 Cal.Rptr. 53, 562 P.2d 1302] and cases there cited.) Accordingly, if the superior court lacks jurisdiction to enjoin the union's conduct under current section 527.3, the injunction previously issued must be reversed.

In the instant case the two issues before us—the lawfulness of the picketing under prior California law and the power of the superior court to enjoin it under section 527.3—coalesce into one. Although the reach of the Moscone Act may in some respects be unclear, its language leaves no doubt but that the Legislature intended to insulate from the court's injunctive power all union activity which, under prior California decisions, has been declared to be *"lawful activity."* Since, as we shall explain, we find that the picketing at issue here is clearly "lawful" under prior California law, it follows that under the Moscone Act the superior court lacks the power to enjoin that picketing.

The Moscone Act was a compromise measure. The original bill, drafted by union attorneys, clearly sought to limit the injunctive jurisdiction of the superior court. The act declared its purpose expressly: to prevent "the evils which frequently occur when courts interfere with the normal processes of dispute resolution between employers and recognized employee organizations." (Code Civ. Proc., § 527.3, subd. (a).)[2] The Legislature amended the bill to add provisions proposed by management supporters without, however, deleting any of the original provisions. In section 527.3 as finally enacted, the provisions added by amendment strike a discordant stance from those surviving from the original draft, thus creating difficult problems of statutory interpretation.

---

[2]The preamble to the Moscone Act identifies the procedural inequities which occur when the courts issue injunctions in labor disputes. It states:

"In the interpretation and application of this act the public policy of this state is declared as follows:

"Under prevailing economic conditions the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor and thereby to obtain acceptable terms and conditions of employment. It is therefore necessary that he have full freedom of association and self-organization and the right to engage in concerted activities for the purpose of collective bargaining, picketing or other mutual aid or protection.

"Equity procedure that permits a complaining party to obtain sweeping injunctive relief that is not preceded by or conditioned upon notice to and hearing of the responding

The issue in the present case involves primarily the interpretation of subdivision (b), one of the provisions remaining from the original draft. This subdivision provides as follows:

"The acts enumerated in this subdivision, whether performed singly or in concert, shall be legal, and no court nor any judge nor judges thereof, shall have jurisdiction to issue any restraining order or preliminary or permanent injunction which, in specific or general terms, prohibits any person or persons, whether singly or in concert, from doing any of the following:

"(1) Giving publicity to, and obtaining or communicating information regarding the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling any public street or any place where any person or persons may lawfully be, or by any other method not involving fraud, violence or breach of the peace.

"(2) Peaceful picketing or patrolling involving any labor dispute, whether engaged in singly or in numbers.

"(3) Assembling peaceably to do any of the acts specified in paragraphs (1) and (2) or to promote lawful interests."

The language of this subdivision, although broad and sweeping in scope and purpose, leaves some doubt respecting its application to the present context. Subpart (2) of the subdivision appears to declare "peaceful picketing" to be legal, and thus not subject to injunction, without regard to the location of the picketing; subpart (1), however, declares picketing "not involving fraud, violence or breach of the peace" legal only if it occurs in "any public street or any place where any person

party or parties, or that issues after hearing based upon written affidavits alone and not wholly or in part upon examination, confrontation and cross-examination of witnesses in open court, is peculiarly subject to abuse in labor litigation for each of the following reasons:

"(a) The status quo cannot be maintained, but is necessarily altered by the injunction.

"(b) The determination of issues of veracity and of probability of fact from the affidavits of the opposing parties which are contradictory and, under the circumstances, untrustworthy rather than from oral examination in open court, is subject to grave error.

"(c) The error in issuing the injunctive relief is usually irreparable to the opposing party.

"(d) The delay incident to the normal course of appellate procedure frequently makes ultimate correction of error in law or in fact unavailing in the particular case." (Stats. 1975, ch. 1156, § 1, p. 2845.)

or persons may lawfully be." The act does not define this latter phrase. It is suggested that the statutory language cannot be taken literally; a strict reading might appear to authorize picketing in the aisles of the Sears store or even in the private offices of its executives. Arguably, at some such point even peaceful picketing might represent so intrusive an invasion of Sears' use of its property as to compel judicial intervention.

We need not define the precise meaning of subdivision (b) to resolve this present case. Although, as we have seen, the language of subdivision (b) standing alone does not define whether the act prohibits an injunction against picketing in the context of this case, the concluding clause of subdivision (a) offers a guide to the construction of subdivision (b) and clarifies this issue.[3] That clause provides that "the provisions of subdivision (b) . . . shall be strictly construed in accordance with existing law governing labor disputes with the purpose of avoiding any unnecessary judicial interference in labor disputes."[4] As we shall demonstrate, "existing law," as set out in prior decisions of this court, establishes that peaceful picketing on privately owned walks outside the employer's store is not subject to injunction; those decisions also explain that judicial intervention in such a case is "unnecessary" to protect substantial rights of the employer.

In *Schwartz-Torrance Investment Corp.* v. *Bakery & Confectionery Workers' Union* (1964) 61 Cal.2d 766 [40 Cal.Rptr. 233, 394 P.2d 921] (*Schwartz-Torrance*), the superior court enjoined a union from stationing pickets outside the entrance of a bakery on property owned by plaintiff shopping center. On appeal, we stated that the validity of the injunction turned upon a balancing of the union's interest in peaceful picketing for a lawful purpose against the plaintiff's interest in the use and possession of its property.

---

[3]Subdivision (a) of section 527.3 reads as follows: "In order to promote the rights of workers to engage in concerted activities for the purpose of collective bargaining, picketing or other mutual aid or protection, and to prevent the evils which frequently occur when courts interfere with the normal processes of dispute resolution between employers and recognized employee organizations, the equity jurisdiction of the courts in cases involving or growing out of a labor dispute shall be no broader than as set forth in subdivision (b) of this section, and the provisions of subdivision (b) of this section shall be strictly construed in accordance with existing law governing labor disputes with the purpose of avoiding any unnecessary judicial interference in labor disputes."

[4]The phrase "in accordance with existing law governing labor disputes" in subdivision (a) was contained in the language added by amendment to the original draft of the Moscone Act.

The union's interest, we first noted, rests upon both state policy favoring concerted activities of employees (61 Cal.2d at p. 769; see Lab. Code, § 923; *Messner* v. *Journeymen Barbers etc. International Union* (1960) 53 Cal.2d 873, 882 [4 Cal.Rptr. 179, 351 P.2d 347]) and upon principles protecting free speech (61 Cal.2d at p. 770; see *Hughes* v. *Superior Court* (1948) 32 Cal.2d 850, 854 [198 P.2d 885]). Although plaintiff asserted a countervailing interest in the exclusive possession and enjoyment of its property, we noted that "Because of the public character of the shopping center, . . . the impairment of plaintiff's interest must be largely theoretical. . . . Plaintiff suffers no significant harm in the deprivation of absolute power to prohibit peaceful picketing upon property to which it has invited the entire public." (61 Cal.2d at p. 771.) We therefore found that the interest of the union in peaceful picketing outweighed the property right of the center, and reversed the injunction.

We concluded our opinion in the following language: "[T]he picketing in the present case cannot be adjudged in the terms of absolute property rights; it must be considered as part of the law of labor relations, and a balance cast between the opposing interests of the union and the lessor of the shopping center. The prohibition of the picketing would in substance deprive the union of the opportunity to conduct its picketing at the most effective point of persuasion: the place of the involved business. The interest of the union thus rests upon the solid substance of public policy and constitutional right; the interest of the plaintiff lies in the shadow cast by a property right worn thin by public usage." (61 Cal.2d at pp. 774-775.)

*In re Lane* (1969) 71 Cal.2d 872 [79 Cal.Rptr. 729, 457 P.2d 561] (*Lane*), involved a grocery store situated within a privately owned parking area—a factual setting comparable to the present case. Petitioner Lane distributed handbills on the private sidewalk outside the entrance to the store. He was arrested and convicted of violating city ordinances that prohibited remaining on another's property after being notified by the owner to leave and of distributing handbills on private property without the owner's consent. Relying both on federal free speech guarantees as set out in the *Logan Valley* case (*Food Employees* v. *Logan Plaza* (1968) 391 U.S. 308 [20 L.Ed.2d 603, 88 S.Ct. 1601]) and state labor policy as established in *Schwartz-Torrance,* we ordered petitioner's release. In language fully applicable to the instant case, we explained that "If we were to hold the particular sidewalk area to be 'off limits' for the exercise of First Amendment rights in effect we would be saying that by erecting a

'*cordon sanitaire*' around its store, [the store] has succeeded in immunizing itself from on-the-spot public criticism." (71 Cal.2d 872, 876.) In 1970 this court, in its first opinion in *Diamond* v. *Bland* (1970) 3 Cal.3d 653 [91 Cal.Rptr. 501, 477 P.2d 733] (*Diamond I*) applied First Amendment principles as expounded in *Logan Valley* to hold that persons may circulate initiative petitions on shopping center property even though the challenged activity did not involve a labor dispute.

Thus until 1972, decisions of this court and the United States Supreme Court had moved steadily toward the protection of the exercise of free speech upon private business property open to the public. In that year, however, the Supreme Court changed its views on the scope of the First Amendment's embrace of speech on private premises open to the public. In *Lloyd Corp.* v. *Tanner* (1972) 407 U.S. 551 [33 L.Ed.2d 131, 92 S.Ct. 2219], the Supreme Court rejected the reasoning of *Logan Valley,* decreeing that leafleting on shopping center property, which did not relate to any purpose contemplated by the center, found no First Amendment protection. A companion case, *Central Hardware Co.* v. *NLRB* (1972) 407 U.S. 539 [33 L.Ed.2d 122, 92 S.Ct. 2238], held that a union enjoyed no constitutional right to conduct organizational picketing in the employer's parking lot. Finally in *Hudgens* v. *NLRB* (1975) 424 U.S. 507 [47 L.Ed.2d 196, 96 S.Ct. 1029] the Supreme Court expressly overruled *Logan Valley* and held that the First Amendment does not protect picketing on shopping center property.[5]

---

[5]Following the Supreme Court decisions in *Lloyd* and *Central Hardware,* the trial court in *Diamond* v. *Bland* vacated the injunction restraining the shopping center from interfering with the circulation of initiative petitions. On appeal, a majority of this court affirmed the trial court action, holding that under the federal decisions the First Amendment did not protect petitioners' activities on the shopping center property. (*Diamond* v. *Bland* (1974) 11 Cal.3d 331 [113 Cal.Rptr. 468, 521 P.2d 460] (*Diamond II*).) Our decision also rejected petitioners' contention that the state Constitution authorized them to circulate petitions at the shopping center; construing *Lloyd* and *Central Hardware* as holding that the center enjoyed a federal constitutional right of property to exclude petitioners, we concluded that such federal right would prevail over any state constitutional right. (See 11 Cal.3d at p. 335, fn. 4.)

Recently we reconsidered the question of the rights of the property owner, and concluded that *Lloyd* and *Central Hardware* did not confer on the shopping center a federal constitutional right to eject persons who are circulating petitions. Overruling *Diamond II,* we held that article I, sections 2 and 3 of the California Constitution protect the circulation of petitions on shopping center property. (*Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899, 910 [153 Cal.Rptr. 854, 592 P.2d 341].)

The *Robins* decision rests on provisions of the California Constitution. In the instant case, our decision rests on the terms of Code of Civil Procedure section 527.3; accordingly we express no opinion on whether the California Constitution protects the picketing here at issue.

Regardless of any claim of constitutional right, however, both the United States Supreme Court and this court have consistently recognized that federal or state labor law may grant unions rights to conduct activities on the employer's property. In both *Hudgens* v. *NLRB, supra,* 424 U.S. 507 and *Central Hardware Co.* v. *NLRB, supra,* 407 U.S. 539, the high court's holding that the First Amendment did not protect the union's picketing was not dispositive of the case; instead the court remanded the case to the NLRB to determine whether the union had a right to picket under *Labor Board* v. *Babcock & Wilcox Co.* (1956) 351 U.S. 105 [100 L.Ed. 975, 76 S.Ct. 679], a decision interpreting federal labor law. In *Hudgens* the court observed expressly that "statutory or common law may in some situations extend protection . . . against a private corporation . . . who seeks to abridge the free expression of others. . . ." (424 U.S. at p. 513 [47 L.Ed.2d at p. 203].)

The decisions of this court also recognize that statutes and judicial decisions may grant labor unions the right to conduct certain activities on private property. In *Diamond II,* when this court relied on the federal cases to reject the claim of constitutional right by persons circulating initiative petitions, our decision did not overrule either *Schwartz-Torrance* or *Lane;* we distinguished both cases on the ground that "labor unions had a labor dispute with, and were picketing, businesses located within the shopping centers . . . a factor which led us to strike the balance between private property rights and First Amendment activities in favor of the latter." (11 Cal.3d at p. 334, fn. 3.) Subsequently in *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392 [128 Cal.Rptr. 183, 546 P.2d 687], we held that state statutory and administrative law could authorize union access and organizing on a private employer's property.[6]

In summary, the decisions of the United States Supreme Court and of this court recognize that the State of California, by statute or by judicial decision, may permit union activity on private premises. Our earlier decisions in *Schwartz-Torrance* and *Lane*—rulings which have not been overruled or eroded in later cases—established the legality of union picketing on private sidewalks outside a store as a matter of state labor law. Those decisions explained further that judicial action to bar such

---

[6]The United States Supreme Court dismissed an appeal in this case for want of a substantial federal question. (429 U.S. 802 [50 L.Ed.2d 63, 97 S.Ct. 33-34].) The court regards such action as a decision on the merits. (*Hicks* v. *Miranda* (1975) 422 U.S. 332 [45 L.Ed.2d 233, 95 S.Ct. 2281].)

picketing was unnecessary; because the interest of the landowner was but a "thin" and "technical interest" (*Schwartz-Torrance*, 61 Cal.2d at pp. 771, 775), an injunction against such picketing could not be deemed essential to prevent a substantial impairment of property rights.

As we noted earlier, subdivision (a) of the Moscone Act requires the anti-injunction provisions of subdivision (b) to "be strictly construed in accordance with existing law governing labor disputes with the purpose of avoiding any unnecessary judicial interference in labor disputes." We believe that this language requires us to construe subdivision (b) in accord with the holding on *Schwartz-Torrance* and *Lane* of the legality of peaceful picketing on private walkways outside a store, and of the lack of necessity of judicial interference to protect any substantial right of the landowner. We conclude that subdivision (b), so construed, bars the injunction issued in the instant case.

Sears argues, however, that subdivision (a)'s reference to "existing law governing labor disputes" refers not only to *Schwartz-Torrance* and *Lane*, but also to the United States Supreme Court decisions in *Hudgens* v. *NLRB, supra*, 424 U.S. 507, *Central Hardware Co.* v. *NLRB, supra*, 407 U.S. 539, and *Lloyd Corp.* v. *Tanner, supra*, 407 U.S. 551. As we explained in *Robins* v. *Pruneyard Shopping Center, supra*, 23 Cal.3d 899, those Supreme Court decisions hold merely that the action of the landowner in ejecting persons from his property did not constitute state action under the Fourteenth Amendment—an issue irrelevant to the present case. The cited decisions do not establish rules of law "governing labor disputes."

Since both *Hudgens* and *Central Hardware* remanded actions to the NLRB for reconsideration under *Labor Board* v. *Babcock & Wilcox Co., supra*, 351 U.S. 105, we might view Sears' argument as a contention that subdivision (a) incorporates into California law the *Babcock & Wilcox* doctrine under which a union's right to conduct activities on the employer's premises turns largely on the matter of the availability of adequate alternative channels of communication. That doctrine, however, rests on language of the National Labor Relations Act (29 U.S.C. § 151 et seq.) defining certain employer actions as unfair labor practices;[7] and, as we have seen, California courts have never followed the *Babcock & Wilcox* doctrine requiring a case-by-case determination, but have established rules of more general applicability. (See *Schwartz-Torrance;* cf. *Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d 392, 409.)

---

[7]The *Babcock & Wilcox* doctrine is not a rule of constitutional law binding upon the states. (*Agricultural Labor Relations Bd.* v. *Superior Court, supra*, 16 Cal.3d 392, 409.)

In commanding the courts to construe subdivision (b) of section 527.3 in accord with "existing law governing labor disputes," the Legislature, we believe, intended the courts to continue to follow principles of California labor law extant at the time of the enactment of section 527.3.[8] We do not surmise that the Legislature intended the courts to abandon such principles in favor of federal rules, such as the *Babcock & Wilcox* doctrine, which rest upon a statutory and administrative basis not found in California law.

Sears further contends that injunctive relief against the union's alleged trespass is authorized by subdivision (e), one of the provisions added by amendment to the Moscone Act. Subdivision (e) provides that "It is not the intent of this section [§ 527.3] to permit conduct that is unlawful including breach of the peace, disorderly conduct, the unlawful blocking of access or egress to premises where a labor dispute exists, or other similar unlawful activity." We find this subdivision inapposite, for two reasons. First, the picketing in the instant case, by reason of the decisions of this court in *Schwartz-Torrance* and *Lane* and the express language of subdivision (b) of the act, is lawful conduct so long as it does not involve fraud, violence, or breach of the peace.[9] Second, under the canon of construction known as

[8]In requiring that subdivision (b) be construed in accord with existing law governing labor disputes, subdivision (a) states that such construction should serve "the purpose of avoiding any unnecessary judicial interference in labor disputes." Consequently if, as the preamble to section 527.3 suggests, existing law permits certain unnecessary judicial interference, the language of subdivision (a) does not preclude the courts from construing subdivision (b) to avoid such interference in the future.

[9]The parties dispute whether the picketing in the instant case constituted a criminal trespass under subdivisions (j), (k), or (l) of Penal Code section 602. We think it unnecessary to embark upon a detailed analysis of that section, for union activity which is authorized by state labor law constitutes an exception to the criminal trespass statutes. (See *Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d 392, 421; *Lane, supra,* 71 Cal.2d 872 (city trespass ordinance); cf. *In re Zerbe* (1964) 60 Cal.2d 666 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840] (construing Pen. Code, § 552.1.) In any event, the language of subdivision (b) of section 527.3 is explicit: union activity protected by that subdivision is not only not subject to injunction but "shall be legal," language which precludes any ruling that such activity constituted a criminal trespass. As a specific statute regulating labor disputes, section 527.3 would prevail over the earlier and more general criminal trespass laws. (See *Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d 392, 420.)

At oral argument the parties called our attention to an amendment to Penal Code section 602, subdivision (n). Under that amendment, effective January 1, 1979, a person does not violate subdivision (n) by refusing to leave property on the request of the owner, his agent, or the lawful possessor of the property, if the person is "engaged in lawful labor union activities which are permitted to be carried out on the property by the California Agricultural Labor Relations Act . . . or by the National Labor Relations Act." The

*ejusdem generis,*[10] subdivision (e)'s reference to "conduct that is unlawful" must be limited to conduct which constitutes breach of the peace, disorderly conduct, the blocking of access or egress, or other "similar unlawful activity." Peaceful picketing on private sidewalks, because it does not involve violence or substantially impair the rights of others, is not conduct "similar" to the listed acts.[11]

■ We turn to Sears' contention that it has a federally protected right to enjoin picketing on its property which prevails over contrary state law. Sears first maintains that it enjoys such a right under the due process clause of the Fourteenth Amendment, citing for that proposition the Supreme Court decisions previously discussed in *Lloyd Corp.* v. *Tanner, supra,* 407 U.S. 551; *Central Hardware Co.* v. *NLRB, supra,* 407 U.S. 539; and *Hudgens* v. *NLRB, supra,* 424 U.S. 507. We concluded in *Robins* v. *Pruneyard Shopping Center, supra,* 23 Cal.3d 899, however, that the cited decisions did not involve a constitutionally protected right of property at all, but were concerned solely with whether the action of the landowner constituted "state action" under the Fourteenth Amendment. Consequently those decisions offer no support for Sears' claim that it enjoys a federal right to enjoin picketing on its premises.[12]

parties recognize that this amendment merely codifies existing law; indeed union activity protected by state or federal labor law clearly does not violate any subdivision of Penal Code section 602.

[10]"[T]he doctrine of *ejusdem generis* (also known as Lord Tenterden's rule) . . . states that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage." (*Scally* v. *Pacific Gas & Electric Co.* (1972) 23 Cal.App.3d 806, 819 [100 Cal.Rptr. 501]; see Civ. Code, § 3534 ("Particular expressions qualify those which are general"); *In re Johnson* (1914) 167 Cal. 142 [138 P. 740].)

[11]Sears argues that trespassory picketing involves a potential of violence (see *Sears Roebuck & Co.* v. *Carpenters, supra,* 436 U.S. 180, 213 [56 L.Ed.2d 209, 235] (conc. opn. of Powell, J.)); and that "acts . . . likely to produce violence in others" may constitute a breach of the peace (*In re Brown* (1973) 9 Cal.3d 612, 617 [108 Cal.Rptr. 465, 510 P.2d 1017]). This argument appears to be based on the assumption that the employer has and will exercise a right of self-help to eject the pickets. If the picketing is lawful, however, then the employer has no right to eject the pickets; the possibility that it may attempt to do so unlawfully and thereby precipitate violence is no basis for an injunction barring peaceful picketing.

[12]Sears also asserts a constitutional right to access to the courts to enjoin illegal trespassing. (Cf. *Boddie* v. *Connecticut* (1971) 401 U.S. 371, 375-376 [28 L.Ed.2d 113, 117-118, 91 S.Ct. 780].) The assertion falls with our holding that the union picketing at issue here is not illegal.

■ The Fourteenth Amendment, of course, does protect Sears against any state statute which takes property without due process of law. A statute is invalid under the due process clause of the Fourteenth Amendment, however, only if it lacks a "real or substantial relation to the public health, safety, morals or general welfare." (*Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 490 [234 P. 381, 38 A.L.R. 1479]; *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 604 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]; see *Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d 392, 409-410.) The Moscone Act, although held to deny Sears the right to enjoin picketing on its premises under the facts of the instant case, is clearly valid under the foregoing standard; its purpose—the elimination of unnecessary judicial intervention into labor disputes—indisputably bears a reasonable relationship to legitimate state objectives.

■ Finally, Sears argues that federal labor law grants it the right to bar union picketing on its premises under the circumstances of the instant case, and that such federal law must prevail over conflicting state statutes. Sears relies on *Labor Board* v. *Babcock & Wilcox Co. supra,* 351 U.S. 105, which stated that an employer may validly post his property against nonemployee distribution of union literature if the employer does not discriminate against the union and the union has available channels of communication. (351 U.S. at p. 112 [100 L.Ed. at p. 982].) *Babcock & Wilcox,* however, held nothing more than that an employer who adopts and enforces a nondiscriminatory no-solicitation rule does not commit an unfair labor practice. Nothing in the decision, or the federal statutes which it construes, confers on the employer an affirmative right to exclude union pickets unless such picketing constitutes an unfair labor practice. Sears does not contend here that the union picketing constituted an unfair labor practice and, in any event, such a contention must be raised before the National Labor Relations Board, not the state court. We therefore conclude that Sears can assert no claim based upon the federal Constitution, statutes, or cases which would require the California courts to enjoin the picketing in the present case.

■ In summary, the sidewalk outside a retail store has become the traditional and accepted place where unions may, by peaceful picketing, present to the public their views respecting a labor dispute with that store. Recognized as lawful by the decisions of this court, such picketing likewise finds statutory sanction in the Moscone Act, and enjoys protection from injunction by the terms of that act. In such context the

location of the store whether it is on the main street of the downtown section of the metropolitan area, in a suburban shopping center or in a parking lot, does not make any difference. Peaceful picketing outside the store, involving neither fraud, violence, breach of the peace, nor interference with access or egress, is not subject to the injunction jurisdiction of the courts.

The order granting a preliminary injunction is reversed.

Bird, C. J., and Mosk, J., concurred.

NEWMAN, J.—I agree that the injunction order should be reversed, and I concur in nearly all of Justice Tobriner's reasoning. He detects in the Moscone Act, however, certain ambiguities that to me do not seem to be confounding; and, unlike him, I do not believe that "the Legislature . . . intended the courts to continue to follow [all] principles of California labor law extant at the time of the enactment of section 527.3." (Maj. opn., *ante,* at p. 330.)

CLARK, J.—I dissent.

### I

As pointed out in our earlier unanimous opinion in this case, picketing occurred only on Sears' parking lot areas immediately adjacent to walkways abutting the sides of the store building. (*Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters* (1976) 17 Cal.3d 893, 896 [132 Cal.Rptr. 443, 553 P.2d 603].) The record reveals that on at least one occasion, a picket stopped a car in the parking lot by stepping in front of it. No evidence exists of picketing on the walkways. Nevertheless, because the majority are determined to treat this case as if it involved picketing on a sidewalk, the dissent must address the issue.

### II

The Moscone Act expressly provides in Code of Civil Procedure section 527.3, subdivision (e): "It is not the intent of this section to permit conduct that is unlawful including breach of the peace, disorderly conduct, the unlawful blocking of access or egress to premises where a

labor dispute exists, or other similar unlawful activity." Subdivision (a) provides that the provisions of subdivision (b)—dealing in part with picketing—are to be construed in accordance with "existing law." While this language may not have been part of the legislation as proposed, it is part of the legislation as enacted, and must be given effect by all—including this court. Conversely, the fact that the original proponents of the act sought to exempt certain union activity from criminal statutes, furnishes no justification for refusing to enforce the clear legislative direction ultimately adopted.

The quoted language reinforced by legislative history makes clear that the Legislature in adopting the Moscone Act did not intend to exempt labor union conduct from existing criminal statutes. Indeed, it is difficult to see how the Legislature could have made its intent clearer. The majority's argument—that the Legislature intended to make exemptions to the trespass statutes by failing to expressly mention trespasses—must be rejected.

When the Legislature has sought to exempt labor union conduct from trespass statutes (e.g., Pen. Code, § 602), it has indicated both the conduct and property to be exempted (Pen. Code, §§ 552-555.5, 602, subd. (n); *In re Zerbe* (1964) 60 Cal.2d 666, 668 et seq. [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840]), or has authorized an administrative agency to adopt rules specifying the exempt property and conduct (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 426-429 [128 Cal.Rptr. 183, 546 P.2d 687]). In contrast to the above statutes, the Moscone Act clearly expresses no intent to make exemptions to existing criminal law. Obviously, absent legislative authorization, this court is not free to adopt exceptions to criminal statutes for favored groups.

Endeavoring to find in the Moscone Act an exemption from trespass statutes, the majority—relying on the act's reference to "existing law"—claim the reference includes two discredited decisions by this court. Both cases erroneously relied upon by the majority as declaring a right to picket on private walkways (*Schwartz-Torrence Investment Corp.* v. *Bakery & Confectionery Workers' Union* (1964) 61 Cal.2d 766 [40 Cal.Rptr. 233, 394 P.2d 921], and *In re Lane* (1969) 71 Cal.2d 872 [79 Cal.Rptr. 729, 457 P.2d 561]) are premised on the ground that picketing on private property involves rights protected by the First Amendment. That doctrine has been repudiated.

In *Hudgens* v. *NLRB* (1976) 424 U.S. 507 [47 L.Ed.2d 196, 96 S.Ct. 1029], the Supreme Court stated: " 'To hold that store owners are compelled by law to supply picketing areas for pickets to drive store customers away is to create a court-made law wholly disregarding the constitutional basis on which private ownership of property rests in this country.' " (*Id.,* at p. 517 [47 L.Ed.2d at p. 205].) Rejecting the claim that picketing on private property is entitled to constitutional protection, the court stated: "We conclude, in short, that under the present state of the law the constitutional guarantee of free expression has no part to play in a case such as this."[1] (*Id.,* at p. 521 [47 L.Ed.2d at p. 207].)

Because the foundations of *Schwartz-Torrence* and *Lane* have been repudiated, those cases either alone or in conjunction with the Moscone Act furnish no basis for establishing a right to picket on private property.[2]

While I agree generally with the majority that the Moscone Act prohibits injunctions against lawful picketing as determined by prior law, the statutory codification of judge-made law does not include decisions based on erroneous constitutional doctrines, subsequently repudiated by the courts.

In *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 814 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], this court considered the specific codification of the contributory negligence doctrine—a common law or judicially created rule. The *Li* majority stated: "it was not the intention of the Legislature in enacting section 1714 of the Civil Code, as well as other sections of that code declarative of the common law, to insulate the matters therein expressed from further judicial development; rather it was the intention of the Legislature to announce and formulate existing common law principles and definitions for purposes of orderly and concise presentation and with a distinct view toward continuing judicial evolution." On the basis of this analysis the majority concluded it was

---

[1] In *Hudgens* the court stressed: " '[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.' " (*Hudgens* v. *NLRB, supra,* 424 U.S. 507, 520 [47 L.Ed.2d 196, 207].) Thus, if the First Amendment requires Sears to open its private property to pickets, it must open its private property to all who wish to exercise First Amendment rights including demonstrators, political candidates, handbill distributors, and business competitors.

[2] Once we recognize that the constitutional bases of *Schwartz-Torrence* and *Lane* are repudiated, the cases must be repudiated in toto. Absent constitutional requirement or legislative direction, we simply may not make exceptions to criminal statutes.

free to repudiate the codified contributory negligence rule in favor of what it deemed to be a correct, more equitable rule.[3]

As in *Li,* it may be assumed the Legislature when referring to "existing law" did not intend to freeze judicially declared law, especially when that law was based on erroneous constitutional doctrine.

Because the language of the act expressly demonstrates legislative intent not "to permit conduct that is unlawful," and because we have no authority to create exceptions from the criminal trespass statutes, we may not authorize trespasses on private parking lots or private walkways.

The order granting preliminary injunctions should be affirmed.

Manuel, J., concurred.

**RICHARDSON, J.**—I respectfully dissent. I agree with Justice Clark's dissenting position to the effect that the majority has misread and misconstrued the Moscone Act (Code Civ. Proc., § 527.3) in holding that the act divests our courts of their historic and traditional equity jurisdiction to enjoin trespassory labor activities occurring on private property. In addition, however, it should be noted that the majority's interpretation of the act renders it *unconstitutional* under controlling United States Supreme Court decisions which hold that a private store owner enjoys a *federal* constitutional right to reasonable protection from such trespassory invasions.

Thus, during an earlier stage of the very proceedings now before us, the United States Supreme Court expressly stated that "Experience with trespassory organizational solicitation by nonemployees is instructive . . . . While *Babcock* [*Labor Board* v. *Babcock & Wilcox Co.* (1956) 351 U.S. 105 (100 L.Ed. 975, 76 S.Ct. 679)] indicates that an employer may not always bar nonemployee union organizers from his property, *his right to do so remains the general rule.* To gain access, *the union has the burden*

---

[3]The Legislature, of course, is the proper governmental agency authorized to enact the laws of this state. If, however, in codifying judicially declared doctrine the Legislature intends to continue to recognize the judicial evolution of that doctrine then, as in *Li,* the courts may continue to develop and declare new concepts. They may do so, however, only because the Legislature intends that they do so. Should the Legislature express itself contrary to a judicially developed doctrine, courts are bound to give recognition to such expression of legislative intent.

*of showing that no other reasonable means of communicating its organizational message to the employees exists* or that the employer's access rules discriminate against union solicitation. That the burden imposed on the union is a heavy one is evidenced by the fact that *the balance struck* by the [National Labor Relations] Board and the courts under the *Babcock* accommodation principle *has rarely been in favor of trespassory organizational activity.* [¶] Even on the assumption that picketing to enforce area standards is entitled to the same deference in the *Babcock* accommodation analysis as organizational solicitation, *it would be unprotected in most instances.*" (*Sears, Roebuck & Co.* v. *Carpenters* (1978) 436 U.S. 180, 205-206 [56 L.Ed.2d 209, 230-231, 98 S.Ct. 1745], italics added and fns. omitted; see also *Hudgens* v. *NLRB* (1976) 424 U.S. 507 [47 L.Ed.2d 196, 96 S.Ct. 1029]; *Central Hardware Co.* v. *NLRB* (1972) 407 U.S. 539, 544-547 [33 L.Ed.2d 122, 127-129, 92 S.Ct. 2238].)

Thus, the high court has instructed us in unmistakable terms that trespassory picketing of the nature involved herein is probably unlawful under federal standards. Yet the majority wholly ignores these standards in determining whether California courts have jurisdiction to enjoin such activity. It is uncontradicted that in the present case the union has failed to carry its burden, under *Babcock,* of showing a lack of reasonable alternative means of communicating its message. Nevertheless, the majority upholds the union's activities solely in reliance upon a provision of *state* law which purportedly permits them to flourish unabated.

The majority's holding assumes that the foregoing federal principle of accommodation freely may be modified, subordinated or even wholly ignored at the whim of state courts or legislators. According to the majority, this federal principle "rest[s] upon a statutory and administrative basis not found in California law." (*Ante,* p. 330.) On the contrary, the federal principle discussed in *Babcock, Central Hardware* and *Hudgens* clearly is solidly founded upon the *private property rights* of the store owner, which rights derive not from any capricious or evanescent state statute or administrative ruling, but rather upon the rock-solid footing of the Fifth and Fourteenth Amendments to the United States Constitution. The accommodation principle painstakingly developed by the United States Supreme Court strikes a careful balance between the legitimate interests of organized labor and the constitutionally derived property rights of the owner. The high court in *Babcock* insisted that "Accommodation between the two [interests] must be obtained with as little destruction of one as is consistent with the maintenance of the other."

**338**

(351 U.S. at p. 112 [100 L.Ed. at pp. 982-983].) Further, *Central Hardware* teaches that "the principle of accommodation announced in *Babcock* is limited to labor organization campaigns, *and the 'yielding' of property rights it may require is both temporary and minimal.*" (407 U.S. at p. 545 [33 L.Ed.2d at p. 127], italics added.)

In contrast with the Supreme Court's carefully circumscribed formulation, the majority interprets the Moscone Act as stripping from California courts any jurisdiction to apply the balancing test of the federal cases. The "balance" is struck, in advance and uniformly, in favor of trespassory labor activity whether or not reasonable alternative means of communication exist, and whether or not these activities involve only a "temporary and minimal" yielding of the store owner's property rights. As I have previously argued in a recent case involving similar federally protected rights of the private shopping center owner, the majority's sole reliance upon *state* statutory or constitutional provisions or policy is entirely misplaced. Where there are available other reasonable means of transmitting the union message, such trespassory activity must yield to the "paramount federal constitutional imperative" protecting the property interests of the landowner. (*Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899, 916 [153 Cal.Rptr. 854, 592 P.2d 341] (dis. opn.).)

I would affirm the order granting a preliminary injunction.

Clark, J., concurred.