CANTIL-SAKAUYE, C. J., Concurring.
I write separately to address further the rights set forth in the Moscone Act (Code Civ. Proc., § 527.3), to provide guidance to the lower courts and the parties on remand.
As we explained in Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters (1979) 25 Cal.3d 317 [158 Cal.Rptr. 370, 599 P.2d 676] (Sears), the Moscone Act was a product of compromise. Although drafted by union attorneys, it was modified at the behest of supporters of management. (Sears, at p. 323.) In particular, the bill was amended to provide that the act *1105 “shall be strictly construed in accordance with existing law governing labor disputes,” and “[i]t is not the intent of this section to permit conduct that is unlawful including breach of the peace, disorderly conduct, the unlawful blocking of access or egress to premises where a labor dispute exists, or other similar unlawful activity.” (Sen. Bill No. 743 (1975-1976 Reg. Sess.) § 2, as amended Aug. 26, 1975; see now Code Civ. Proc., § 527.3, subds. (a), (e).) Therefore, in determining the scope of the conduct that is lawful under the Moscone Act, it is necessary to consider not only the rights and limitations expressly set forth in the act, but also “ ‘existing law.’ ” (Kaplan’s Fruit & Produce Co. v. Superior Court (1979) 26 Cal.3d 60, 77 [160 Cal.Rptr. 745, 603 P.2d 1341] (Kaplan’s Fruit).)
It has long been established that labor is entitled to engage in peaceful picketing to advertise its grievances for the purpose of persuading others to labor’s cause. (Hughes v. Superior Court (1948) 32 Cal.2d 850, 854 [198 P.2d 885] [“ ‘the right to picket peacefully and truthfully is one of organized labor’s lawful means of advertising its grievances to the public .. .’ ”]; Lisse v. Local Union No. 31 (1935) 2 Cal.2d 312, 319 [41 P.2d 314] (Lisse) [“ ‘ “the right by all legitimate means—of fair publication, and fair oral or written persuasion, to induce others interested in or sympathetic with their cause” ’ ”].) “As it has ever been, the only legitimate objective of picketing thus continues to be the transmission of information to the public, so that the public may know the picketers’ grievance and elect to support or reject it.” (International Molders etc. v. Superior Court (1977) 70 Cal.App.3d 395, 404 [138 Cal.Rptr. 794].)
It follows from these established principles, and is confirmed by the Moscone Act’s legislative history, that labor activity with an objective other than communicating labor’s grievances and persuading listeners exceeds the right to engage in peaceful picketing within the meaning of the Moscone Act. (See Ops. Cal. Legis. Counsel, No. 16257 (Aug. 4, 1975) Injunctions: Labor Disputes (Sen. Bill No. 743) 5 Assem. J. (1975-1976 Reg. Sess.) p. 9020 [“while it must be peaceful and truthful, picketing or other concerted action must also be conducted for a legal purpose, and however orderly the manner in which it is conducted, the illegality of its purpose provides a complete basis for injunctive relief’].) For example, “picketing, wherein the persuasion brought to bear contains a threat of physical violence, is unlawful, and . . . the use of words and an aggregation of pickets which reasonably induce fear of physical molestation may properly be enjoined.” (Pezold v. Amalgamated etc. Workmen (1942) 54 Cal.App.2d 120, 123 [128 P.2d 611].) Labor actions need not, however, carry threats of violence or intimidation to fall outside the protection of the law. Speech or conduct directed toward interference with the owner’s business by means other than persuasion of patrons to labor’s position also falls outside the rights enunciated in the case law. (See Ops. Cal. Legis. Counsel, No. 16257, supra, 5 Assem. J. (1975-1976 Reg. Sess.) *1106 p. 9021 [existing law permitted limitations on a labor organization’s manner of use of a public sidewalk “so that there is neither intimidation nor undue interference with its use by . . . customers”].) For example, patrolling a small area with more signs than reasonably required to publicize the dispute and communicate the picketers’ ideas to patrons may have no purpose other than interfering with the owner’s business. Similarly, using large signs for the purpose of obscuring potential patrons’ view of the owner’s signs and displays, is not protected activity. (See Pezold, supra, at p. 123 [“it would be stubbornly refusing to admit the obvious not to see in the activities of picketing on many occasions more than the mere expression of ideas”]; see also Senn v. Tile Layers Union (1937) 301 U.S. 468, 479 [81 L.Ed. 1229, 57 S.Ct. 857] [Wisconsin’s “statute provides that the picketing must be peaceful; and that term as used implies not only absence of violence but absence of any unlawful act. ... It precludes any form of physical obstruction or interference with the plaintiff’s business.”]; M Restaurants, Inc. v. San Francisco Local Joint Exec. Bd. Culinary etc. Union (1981) 124 Cal.App.3d 666, 676 [177 Cal.Rptr. 690] [the activities authorized by the Moscone Act are similar to the activities authorized by Wisconsin’s statute].)
These principles also answer an issue we identified in Sears, supra, 25 Cal.3d 317, in which we observed that “a strict reading [of the Moscone Act] might appear to authorize picketing in the aisles of the Sears store or even in the private offices of its executives.” (Id. at p. 325.) Labor is fully able to publicize its message near the entrances to a business; at that location, the picketers will cross paths with everyone who enters the business. Communicating inside the business premises is not only unnecessary, but it would invariably interfere with the business activities being conducted inside and annoy and harass patrons. Therefore, although labor may conduct its activities at the entrance of the business, it may not enter the business to do so.
Labor is generally entitled to be at the entrance of a business because that is the most effective point to communicate its grievances with the business to potential patrons. (Schwartz-Torrance Investment Corp. v. Bakery & Confectionery Workers’ Union (1964) 61 Cal.2d 766, 770-771 [40 Cal.Rptr. 233, 394 P.2d 921].) Labor may not, however, use the location in front of the business to communicate with a distant audience if the size of its signs or the volume of its speech thereby repel patrons from the business. At the point at which the signs and the sound levels interfere with the business for reasons other than their persuasive message, the communication is no longer lawful. Labor must share the space in front of the business with patrons, and may not unduly interfere with their ingress and egress, physically or through other means. (Kaplan’s Fruit, supra, 26 Cal.3d at p. 78.)
Finally, because the Moscone Act is to be construed “with the purpose of avoiding any unnecessary judicial interference in labor disputes” (Code Civ. *1107 Proc., § 527.3, subd. (a)), conflicts between labor’s exercise of its right to communicate and an owner’s right to have those who engage in conduct that is not protected by the Moscone Act removed from its property will necessarily be addressed initially between the two opposing sides and, perhaps, by law enforcement. (See Lab. Code, § 1138.1, subd. (a)(5) [a prerequisite to injunctive relief in a labor dispute is a showing “[t]hat the public officers charged with the duty to protect complainant’s property are unable or unwilling to furnish adequate protection”].) A business owner will be in a superior position to recognize the impact that labor’s conduct may have on its business, independent of the conduct’s effect of persuading patrons. For example, the owner will be familiar with its own promotional activities and will be aware of the impact that labor’s signs, by virtue of their size, height, or location, will have on those activities. An owner may also learn from its patrons how the labor action is affecting them. Although business owners do not have a right in this context to unilaterally impose reasonable time, place, and manner restrictions on speakers—the standard when the right to speech is based on the existence of a public forum—they may certainly articulate, before any labor action or on an ad hoc basis, rules and policies aimed at curbing labor conduct that exceeds the rights recognized by the Moscone Act. Labor must abide by the owner’s rules and policies to the extent required to prevent unlawful interference with the business, despite the fact that the limits imposed by the owner may reduce labor’s ability to communicate its message. Otherwise, the conduct will exceed the rights codified in the Moscone Act.
We recognized in Lisse, supra, 2 Cal.2d 312, that “ ‘whether picketing is lawful or unlawful depends upon the circumstances surrounding each case . . . [and] upon the conduct of the parties themselves.’ ” (Id. at p. 321.)'A trial court must weigh all the evidence and determine whether the conduct of those engaging in labor speech is detrimental to the owner for reasons other than persuasion of listeners to the views of the speaker. Although the owner’s rules do not define the boundaries of what constitutes lawful labor conduct, the owner’s experience and knowledge with respect to its business and the manner in which the labor conduct is affecting its business, all of which presumably form the basis for the owner’s rules, will be relevant to the court’s determination of whether the labor activity is interfering with the business in ways other than persuasion by labor’s message. If the evidence presented by the owner establishes such interference, labor’s conduct will not be protected by the Moscone Act, and will constitute an unlawful trespass.
Finally, our discussion concerns only the rights codified in the Moscone Act. When labor interests engage in concerted activities on public property, they enjoy all of the protections of the National Labor Relations Act (29 U.S.C. § 151 et seq.; NLRA). And when they engage in speech in a public forum as recognized in Robins v. Pruneyard Shopping Center (1979) 23 Cal.3d *1108 899 [153 Cal.Rptr. 854, 592 P.2d 341], they enjoy the same speech rights afforded others under the California Constitution, subject to any restrictions imposed by federal labor law. When, however, they engage in speech on private property that is not a public forum, as in this case, their rights arise from California statutory provisions, and the extent of their rights depends on the principles codified in those provisions. Principles developed under the NLRA with respect to labor conduct on public property, or in the context of case law addressing speech in a public forum, cannot be applied to expand the right established by the Moscone Act to engage in conduct on private property. If labor’s conduct on private property exceeds the activities that are protected by the Moscone Act, its conduct will constitute an unlawful trespass, and may be excluded by the employer. (See N.L.R.B. v. Calkins (9th Cir. 1999) 187 F.3d 1080, 1094 [“To the extent that state law permits employers’ exclusion of [concerted labor activities from private property], the NLRA does not mandate accommodation.”].)
Baxter, L, and Corrigan, L, concurred.