[No. B002193. Second Dist., Div. Four. Apr. 2, 1984.]

PLAYBOY ENTERPRISES, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RICHARD GREENE et al., Real Parties in Interest.

**COUNSEL**

Selvin & Weiner and Paul P. Selvin for Petitioner.

No appearance for Respondent.

Lewis, D'Amato, Brisbois & Bisgaard, Robert Gaylord Smith, Charles K. Wake and John D. Robertson for Real Parties in Interest.

**OPINION**

**WOODS, P. J.**—By petition for writ of mandate, Playboy Enterprises, Inc., a nonparty to the underlying civil action, seeks to vacate a trial court order compelling it to produce in discovery all records and editorial materials in its possession concerning an interview of plaintiffs Richard Marin and Thomas Chong from which an article published in Playboy's monthly magazine was derived. Defendants below, Greene & Reynolds, seek the materials for the purpose of verifying the accuracy of certain statements

attributed to plaintiff Marin in the published article, which statements Marin now denies he made. Defendants contend that the materials sought might be used at trial to impeach the credibility of plaintiff Marin and to demonstrate that plaintiffs were not defrauded.

Two principal issues are raised by this petition.

## I

First, what is the scope of protection afforded by Evidence Code section 1070 and article I, section 2 of the California Constitution concerning undisseminated notes and other tangible records and editorial drafts of a magazine publisher from which a published interview article is derived?

## II

Second, in the context of civil ligitation, does the interest of a nonparty publisher in asserting protection from compelled disclosure of its undisseminated notes and records overcome the competing interests of civil litigants in obtaining such source materials when needed to possibly assist them in presenting their case against other litigants?

For the reasons discussed below, we conclude that the materials sought in discovery fall within the protective scope of section 1070 of the Evidence Code and article I, section 2 of the California Constitution. We also conclude that civil litigants have no constitutional or other rights sufficient to overcome this protection.

The material facts are simple and not in dispute.

Plaintiffs, a comedy team known as Cheech & Chong, sued their former accountants, financial advisors, and business managers, Greene & Reynolds (defendants), for breach of contract and breach of fiduciary duty. Plaintiffs alleged that defendants persuaded them to enter into an unfavorable contract with a certain production company relative to their first motion picture "Up in Smoke" without disclosing to them that defendants had conflicting interests by reason of defendants' business relationship with and financial interest in the production company.

In February and March of 1983, defendants served subpoenas re depositions and subpoenas duces tecum upon nonparty Playboy Enterprises, Inc. (petitioner) commanding the production of certain specified notes, tapes and records of an interview conducted of plaintiffs by a freelance reporter, from which materials an interview article was written and published in an issue

of Playboy Magazine. The attendance of petitioner's custodian of records and of a designated representative pursuant to section 2019, subdivision (a)(6) of the Code of Civil Procedure was also demanded by the subpoenas.

The materials subpoenaed included all documents in the possession of petitioner relating to the interview of plaintiffs by freelance reporter Ken Kelly, all audio and video recordings of the interview which were used in any way as source material for the resulting article, and all documents relating to the researching, writing or editing of the article.

Neither petitioner's custodian of records nor any designated representative appeared at the scheduled deposition, but petitioner's counsel appeared to voice objections to the lack of jurisdiction to compel attendance of Playboy officers who reside outside California[1] and to raise objections under the First Amendment and article I, section 2 of the California Constitution to disclosure of the materials and documents sought.

Defendants caused an order to show cause re failure to appear at deposition to be issued. At the May 27, 1983, hearing on that order, respondent refused to compel the discovery sought without prejudice to renewal of the order to show cause in the event defendants could demonstrate unsuccessful diligent efforts to locate and depose Ken Kelly concerning his interview of plaintiffs.

On September 1, 1983, a second order to show cause was issued based upon defendants' unsuccessful attempts to locate Mr. Kelly. After hearing, respondent entered its order of November 9, 1983, directing petitioner to produce to defendants' counsel and to authenticate "(a) Each and every document (as defined below but specifically including all tapes, cassettes and the like) in its possession or under its control which constitute or memorialize any interview of Richard Marin and Thomas Chong by Ken Kelly, which document in any way was used in preparing, writing or researching the article in the September, 1982 edition of Playboy Magazine entitled '*Playboy* Interview: Cheech & Chong'; [¶] (b) Each and every document which reflects or relates to the editing of the interview for publication in the article, as well as the writing of the article (as used in this order, 'document' is defined to include but not be limited to, any audio or video tapes, cassettes, or rewrites of the article, and any notes or other records of any type reflecting the writing or research of this article); . . ."

---

[1]Petitioner does not argue this jurisdictional issue in this original proceeding. It is assumed that this issue was determined favorably to petitioner below, and that petitioner has abandoned its contentions in this regard on appeal.

The present petition was filed November 15, 1983, and this court issued the alternative writ.

I

*The Protective Scope of Evidence Code Section 1070 and Article I, Section 2 of the California Constitution.*

Since its amendment in 1974,[2] section 1070 of the Evidence Code[3] has provided, in pertinent part, as follows: "(a) A publisher, editor, reporter, or other person connected with or employed upon a newspaper, magazine, or other periodical publication, . . . or any person who has been so connected or employed, cannot be adjudged in contempt by a judicial . . . body having the power to issue subpoenas, for refusing to disclose, in any proceeding . . . the source of any information procured while so connected or employed for publication in a newspaper, magazine or other periodical publication, *or for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public.* [¶] . . . . [¶] (c) *As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought, whether or not related information has been disseminated and includes, but is not limited to, all notes, outtakes, photographs, tapes or other data of whatever sort not itself disseminated to the public through a medium of communication, whether or not published information based upon or related to such material has been disseminated.*" (Italics added.)

By constitutional amendment in 1980, provisions virtually identical to section 1070 were added to article I, section 2 of the California Constitution, elevating the newsperson's protection to the constitutional level.[4] Hereafter, reference to this newsperson's protection will be to article I, section 2.

■  The fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the statute as a whole. (*Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) A corollary rule is that every word and phrase employed is presumed to be intended to have meaning and

---

[2]Statutes 1974, chapter 1456, section 2, page 3184.

[3]Hereafter, all statutory references are to the Evidence Code unless otherwise stated.

[4]Assembly Constitutional Amendment No. 4 (Stats. 1978, res. ch. 77, pp. 4819-4820) was adopted by the electorate of the June 3, 1980, California primary election as article I, section 2 of the California Constitution.

perform a useful function (*Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5]); a construction rendering some words in the statute useless or redundant is to be avoided.

█ Where the same word or phrase might have been used in the same connection in different portions of a statute but a different word or phrase having different meaning is used instead, the construction employing that different meaning is to be favored. (*McCarthy* v. *Board of Fire Commrs.* (1918) 37 Cal.App. 495, 497 [174 P. 402]; *People* v. *Ector* (1965) 231 Cal.App.2d 619, 625 [42 Cal.Rptr. 388]; *Charles S.* v. *Board of Education* (1971) 20 Cal.App.3d 83, 95 [97 Cal.Rptr. 422].)

█ Finally, where general words follow a specific enumeration of particular classes of persons or things, the general words will be presumed as applicable to persons or things of the same general nature or class as those enumerated. (*Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 331, fn. 10 [158 Cal.Rptr. 370, 599 P.2d 676]; *Scally* v. *Pacific Gas & Electric Co.* (1972) 23 Cal.App.3d 806, 819 [100 Cal.Rptr. 501].)

█ With these rules in mind, it is apparent that but one construction treats subdivision (c) as a coherent whole with every word and phrase having a meaningful and integral function. It is that the subdivision (c) definition of "unpublished information" (a term of art therein defined) is structured in two parts corresponding to the two classifications of protection intended.

The first classification is that "As used in this section, 'unpublished information' *includes information* not disseminated to the public by the person from whom disclosure is sought, whether or not related information has been disseminated . . . ." (Italics added.) This has broad reference to factual information that is within the newsperson's knowledge, whether contained in source material or in memory.

The second classification, described in the remaining portion of the single sentence constituting subdivision (c), is that " 'unpublished information' . . . *includes,* but is not limited to, *all notes, outtakes, photographs, tapes or other data of whatever sort* not *itself* disseminated to the public through a medium of communication, whether or not published information based upon or related to *such material* has been disseminated." (Italics added.) This classification of protection expressly and unequivocally refers to the physical records constituting a newsperson's source material, as contrasted to the first classification which refers to information which might be contained therein.

This construction gives internal coherency to the definition and employs every term and portion thereof in a useful and consistent manner. The manifested legislative intent is to give broad protection to both information and source material so long as such matter has not been already disseminated by the person from whom disclosure is sought, even if related or derivative information has been disseminated by such publication.

The remaining rules discussed above support this construction.

First, it is significant that the second portion of the definition employs the term "such material" in the closing provision "whether or not *published information* based upon or related to *such material* has been disseminated." (Italics added.) This significance rests in the fact that "such material" clearly refers back to the enumeration of particular types of physical source material.

Second, the rule that general words immediately following an enumeration of particular types of things should be construed to refer to the same general type or nature of things has clear application. The clause "all notes, outtakes, photographs, tapes *or other data of whatever sort*" (italics added) is thus appropriately read as intending that "data" refer to physical source items of the same general nature as the particular source items enumerated.

Third, the syntax of the clause "all notes, outtakes, photographs, tapes or other data of whatever sort *not itself disseminated*" (italics added) can only be read as meaning that to qualify for protection these physical materials cannot *themselves* have been disseminated as contrasted to dissemination of factual information contained therein.

This construction provides a broad scope of protection and readily discernible guidelines. We perceive it to be a reasonable and practicable construction harmonizing all portions of the statute. (See *Hammarley* v. *Superior Court* (1979) 89 Cal.App.3d 388, 396 [153 Cal.Rptr. 608].) This broad construction safeguards source materials and facts in memory that were obtained on a "not for attribution" or "off the record" basis. It also relieves trial courts of the tedious and dubiously useful task of sorting through source material to discover facts that have been otherwise disseminated and lifting such facts from the source material out of context.

Accordingly, the respondent's order compelling production of petitioner's source materials and editorial drafts and working papers is not enforceable by contempt except to the extent petitioner has previously disseminated to the public through a medium of communication any of those particular materials.

■ Against the construction which we have adopted, defendants contend that petitioner has waived whatever protection it might have under article I, section 2, by having published information that is either an exact transcription of the Marin source materials or so closely derived therefrom that disclosure of the source materials would essentially be a repeat disclosure of the already published statements attributed to Marin. Defendants also maintain that because plaintiff Marin is the attributed source of the published information, petitioner can have no cognizable interest in refusing to disclose its working and editorial materials to protect the confidentiality of its source and thus has no further interest in protecting its undisseminated material.

These contentions are derived from *CBS, Inc.* v. *Superior Court* (1978) 85 Cal.App.3d 241, 250 [149 Cal.Rptr. 421], and are manifestly in direct conflict with the statutory construction adopted herein. We find no support of these positions in the language of the statute.

Article I, section 2 (and § 1070, since its amendment in 1974) provides two general separate and independent protections: (1) that against disclosure of confidential sources, and (2) that against disclosure of "unpublished information" which expressly "includes, . . . , *all* notes, outtakes, photographs, tapes or other data of whatever sort *not itself disseminated* to the public through a medium of communication, *whether or not published information based upon or related to such material has been disseminated.*" (Italics added.) This language does not allow the conclusion that protection of unpublished materials or information is dependent upon the continued confidentiality of the source. (*Hammarley* v. *Superior Court, supra,* 89 Cal.App.3d at pp. 390, 397-398.)

Neither does article I, section 2 allow the construction that its protection is inapplicable whenever unpublished information or materials could or would confirm or amplify the published information derived therefrom because nothing new would be disclosed in the source materials. This would conflict with the statute's unqualified protection "whether or not published information based upon or related to such [unpublished] material has been disseminated." By necessity, published material that could or would be confirmed, amplified or discredited by undisseminated source material is "related to" or "based upon" such unpublished source material.

In the present case defendants maintain that undisseminated interview records would confirm or refute the accuracy of the statements attributed to plaintiff Marin in the Playboy Magazine article. It is evident that the published information attributed to Marin in the article is either based upon or related to the underlying records of the interview. Accordingly, this mate-

rial falls squarely within the ambit of article I, section 2 protection whether the published information is an exact transcription of the source material or paraphrases or summarizes it.

The degree of intensity of a publisher's interest in nondisclosure of particular undisseminated material is not one of the criteria stated in article I, section 2. It provides protection for "all" "such material" and must be deemed reflective of the presumption that a publisher's refusal to disclose is a prima facie demonstration of an interest sufficient to require protection.

■ Defendants also contend that under another recognized rule of construction enactment of the same or a different statute employing language which has previously been judicially construed creates the presumption that the Legislature relied on the interim judicial construction. It is therefore contended that by proposing to the California electorate in 1980 the addition of the language of section 1070 to article I, section 2 of the California Constitution, the Legislature manifested an intent to ratify the "construction" stated in *CBS, supra.* This is the general rule of construction. (*Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684, 688 [8 Cal.Rptr. 1, 355 P.2d 905].)

There is an exception to this general rule however, where, as here, it is apparent from the statute that the legislative intent is clearly contrary to that construction. (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 644 [122 P.2d 526]; *Mattern* v. *Carberry* (1960) 186 Cal.App.2d 570, 573-574 [9 Cal.Rptr. 137]; 58 Cal.Jur.3d, Statutes, § 110, pp. 492-493.) Additionally, *CBS* v. *Superior Court* does not purport to construe section 1070, but, rather, determines its inapplicability upon considerations unrelated to the statutory language.

## II

■ Having concluded that petitioner's materials fall within the protective scope of section 1070 and the constitutional protection of article I, section 2 of the California Constitution, we turn to the remaining question, whether this protection must yield to the competing interests of civil litigants seeking discovery from a nonparty. This aspect of this proceeding presents what appears to be an issue of first impression in this state.

In cases involving a conflict between the criminal defendant's constitutional right to a fair trial and a newsperson's protection under the First Amendment and section 1070, the criminal defendant's constitutionally derived protection has resulted in the rule that "where a criminal defendant has demonstrated a *reasonable possibility* that evidence sought to be dis-

covered might result in his exoneration, he is entitled to its discovery." (*CBS, Inc.* v. *Superior Court, supra,* 85 Cal.App.3d at p. 251; *People* v. *Borunda* (1974) 11 Cal.3d 523, 527 [113 Cal.Rptr. 825, 522 P.2d 1].) **(8)** The criminal defendant's constitutional right to a fair trial derives essentially from the due process guarantees of the Sixth Amendment and the California Constitution. (U.S. Const., Amends. V, VI, XIV; Cal. Const., art. I, § 15; *Hammarley* v. *Superior Court, supra,* 89 Cal.App.3d at pp. 398, 402; *CBS, Inc.* v. *Superior Court, supra,* 85 Cal.App.3d at p. 251; *Nebraska Press. Assn.* v. *Stuart* (1976) 427 U.S. 539, 570 [49 L.Ed.2d 683, 704, 96 S.Ct. 2791].)

■ Accordingly, the threshold question is whether defendants in the underlying civil action have any cognizable right to discovery of sufficient magnitude to create a conflict with article I, section 2 of the California Constitution and necessitate a balancing of these competing interests.

Civil litigants do not have a constitutional right to unrestricted discovery of relevant information. The sole codification of a civil litigant's right to discovery appears in the Code of Civil Procedure. Section 2016, subdivision (b), manifests statutory authorization for civil discovery of material information that is not privileged. Civil discovery is to be liberally allowed in California, but it is not without significant limitations. (§§ 900-1034.)

Our Supreme Court has, however, recognized a general, uncodified state interest in facilitating "the ascertainment of truth and the just resolution of legal claims" of sufficient magnitude to necessitate a balancing against a citizen's general right to privacy under article I, section 1 of the California Constitution. (*Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 657-658 [125 Cal.Rptr. 553, 542 P.2d 977].) In the *Valley Bank* case, a bank sued the real parties in interest to recover the balance allegedly due on a promissory note. The real parties' primary defense was that the bank had defrauded them in connection with the loan transaction in order to benefit other preferred bank customers. Real parties in interest sought discovery of the banking records of those customers who were not parties to the action. The constitutional status of the right to privacy was acknowledged to extend to banking records as a qualified expectation of confidentiality "*absent compulsion by legal process.*" (*Id.,* at p. 657; italics in original.) This privacy interest, as expressly qualified, was balanced against the competing governmental interest in the resolution of civil claims. It was held that, in general, banking records are potentially discoverable, once the individual is notified of judicial discovery efforts, depending on materiality, the nature of objections raised against discovery, and the availability of protective provisions.

However, this principle has only limited application to the present case. The amorphous constitutional right to privacy as defined in *Valley Bank* is inherently qualified, but the constitutional newsperson's protection under article I, section 2 here involved is express in its specific and absolute purpose to shield newspersons from any contempt proceedings for refusal to disclose information or material expressly defined as falling within the scope of its protection. Contempt proceedings inherently involve judicial demands for disclosure. It is important to point out in this regard that article I, section 2 of the California Constitution protects newspersons only from adjudication for contempt. Accordingly, if a newsperson is a defendant in a libel or civil rights violation action, the newsperson could be compelled to disclose such undisseminated material or information by the trial court's employment of the same discovery sanctions to which all civil litigants are subject. (See *KSDO* v. *Superior Court* (1982) 136 Cal.App.3d 375, 380 [186 Cal.Rptr. 211].)

As pointed out in *Richards* v. *Superior Court* (1978) 86 Cal.App.3d 265, 273 [150 Cal.Rptr. 77]: "The right of privacy now incorporated expressly in article I, section 1 of the California Constitution exists to prevent governmental 'snooping,' to inhibit the overly broad collection and retention of unnecessary personal information, the improper use of information properly obtained for a specific purpose, and to avoid the evil incident to lack of a reasonable check on the accuracy of existing records. [Citation.]" Thus, the primary purpose of the article I, section 1 right to privacy was not involved in the conflict in *Valley Bank, supra*. Accordingly, *Valley Bank* is not a case involving a square conflict between the general state interest in litigation by full development of facts and a specific and unqualified right protected by the California Constitution.

The single California case involving civil litigants attempting to compel disclosure of a newsperson's undisseminated source materials is *KSDO* v. *Superior Court, supra*, 136 Cal.App.3d 375. *KSDO* involved a libel action by members of a police department against a newsperson who published stories indicating that plaintiffs' department was involved in narcotics trafficking. Plaintiffs sought to compel disclosure of the defendant's notes and memoranda of his conversations with his sources, whose identities he had already disclosed. Defendant opposed production claiming protection under section 1070, and article I, section 2 of the California Constitution. The trial court granted plaintiffs' motion for production. In the resulting mandate proceeding it was held that neither section 1070 nor article I, section 2 afforded protection because contempt was not threatened and, since the newsperson was a party, the production ordered could be enforced by civil discovery sanctions against which article I, section 2, offers no protection. (*Id.,* at pp. 383-384.) The *KSDO* court instead recognized a general First

Amendment protection in unhindered news-gathering and implicitly recognized a competing general, public interest in civil litigants' obtainment of all material evidence necessary to fully present their case. *KSDO* proceeded to adapt criteria for a balancing of the competing interests of the civil litigants: "(1) the nature of the proceeding, (2) the status of the newsperson as a party or nonparty, (3) alternative sources of the information, and (4) the relationship of the information to the heart of the claim." (*Id.*, at p. 385.) In *dictum, KSDO* speculated that these criteria might operate to require disclosure by a nonparty newsperson to accommodate a civil litigant's interest in discovery.

*KSDO* is thus distinguishable from the present case in two critical aspects. First, it involves a newsperson who is a *party* to the civil action wherein the discovery is sought. Second, as a direct consequence of the first distinction, the newsperson there relied only upon the indirect protection of the First Amendment to freedom from restraint in the news gathering process rather than the direct and specific protection from disclosure of confidential information afforded under article I, section 2 of the California Constitution. Thus, whatever conclusions were volunteered by the *KSDO* court concerning the level of protection available to nonparty newspersons are obiter dictum.

We believe that the rule suggested in the *KSDO* dictum would eviscerate the newsperson's protection. If every civil litigant who postulates that some information material to his case is contained within the undisseminated materials of a newsperson may compel that nonparty newsperson to present his information to the trial court for inspection, balancing of interests, and probable disclosure, the protection afforded newspersons would be greatly reduced, if not wholly vitiated.

Although research has revealed no reported case treating a conflict between the protection of article I, section 2, and the fundamental interest of the state judicial system in promoting full discovery in civil litigation, the recent legislative history of the newsperson's protection reflects a strong interest in the Legislature and the people of this state to afford newspersons the highest possible level of protection from compelled disclosure of confidential sources and confidential information.

The Legislature's 1978 resolution proposing elevation of the protection to the level of a constitutional mandate, and the electorate's adoption of that proposition in 1980, clearly manifest the intent to afford newspersons the highest level of protection under state law.

The elevation to constitutional status must be viewed as an intention to favor the interests of the press in confidentiality over the general and fun-

damental interest of the state in having civil actions determined upon a full development of material facts. As pointed out, the general rule of liberal discovery in civil actions is subject to multiple statutory limitations.

If the Legislature may overcome the general state interest in full civil discovery by enactment of specific statutory privileges limiting disclosure, it certainly has the authority to enact a statute expressly providing a similar protection against compelled disclosure of information by a newsperson. Accordingly, the force of the protection article I, section 2 affords is of no lesser import than the level of protection the Legislature confers by enactment of the privileges found in the Evidence Code. A contrary reasoning would characterize the people's efforts in enacting the statutory protection (§ 1070) as having lesser dignity than other statutes and would render the people's further acts in elevating this protection to the state constitutional level meaningless.

The language of the statute designates the scope and nature of the protection afforded against compelled disclosure. The Legislature's choice not to fashion the protection to include refusal to disclose when the newsperson is a party to a civil action does not allow the conclusion that the Legislature intended to eviscerate the express protection it gives nonparty newspersons in civil actions.

We therefore cannot conclude that the general, common law concept of the full development of facts in civil litigation or the codification thereof, overcomes this specific and facially unqualified state constitutional protection.

■ It has long been acknowledged that our state Constitution is the highest expression of the will of the people acting in their sovereign capacity as to matters of state law. When the Constitution speaks plainly on a particular matter, it must be given effect as the paramount law of the state. (*Ex Parte Braun* (1903) 141 Cal. 204, 211 [74 P. 780]; *People v. Parks* (1881) 58 Cal. 624, 635; *Dye v. Council of the City of Compton* (1947) 80 Cal.App.2d 486, 490 [182 P.2d 623]; *McMillan v. Siemon* (1940) 36 Cal.App.2d 721, 725 [98 P.2d 790].)

■ We hold therefore that the materials sought in discovery fall within the protective scope of section 1070 and article I, section 2 of the California Constitution. We also conclude that the state has no interest and that civil litigants have no constitutional or other rights sufficient to overcome this constitutional protection.

However, here, unlike the situation in *KSDO, supra,* we have the peculiar circumstance that although defendants know the identity of petitioner's

source, freelance writer Ken Kelly, defendants have demonstrated unsuccessful diligent efforts to locate that source. Petitioner has refused to disclose the address and whereabouts of Mr. Kelly based on its "general policy." We find no constitutional protection for this information. Petitioner has made no evidentiary showing, nor has it claimed, that the information falls within the scope of article I, section 2, as having been "obtained or prepared in gathering, receiving or processing of information for communication to the public." Accordingly, we hold that petitioner can be subjected to contempt proceedings for refusal to obey an order to disclose this information.

Let a peremptory writ of mandate issue directing respondent to vacate its order of November 9, 1983, compelling petitioner to produce all the source materials in its possession as requested by real parties, and to make a new and different order compelling petitioner to disclose to real parties the current office and/or residence addresses and telephone numbers of Ken Kelly, the author who interviewed plaintiffs.

McClosky, J., and Amerian, J., concurred.

A petition for a rehearing was denied April 12, 1984, and the application of petitioner and the petition of real parties in interest for a hearing by the Supreme Court were denied May 16, 1984.