**SHAKLEE CORPORATION, Plaintiff,**

v.

**El Marie GUNNELL and Franklin Gunnell, Defendants.**

**In re Subpoena of Victor ZONANA.**

**No. C–86–076–MISC.
Foreign Deposition No. 86–228.**

United States District Court,
N.D. California.

May 14, 1986.

Daniel P. O'Keefe, Dorsey & Whitney, Minneapolis, Minn., for Gunnells.

Rex S. Heinke, Gibson, Dunn & Crutcher, Los Angeles, Cal., for Victor Zonana.

John E. Carne, Crosby, Heafey, Roach & May, Oakland, Cal., for Shaklee Corp.

## MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

FREDERICK J. WOELFLEN, Chief United States Magistrate.

Before me is Defendant's Motion to Compel Production of Documents in compliance with a Subpoena Duces Tecum. The matter was argued before me on April 7, 1986; the parties further briefed the issues; and the matter was submitted on April 30, 1986.

### I. BACKGROUND

This motion is related to a case pending in the United States District Court, District of Utah (C–78–0226) between the Shaklee Corporation and the Gunnells, who are former Shaklee distributors. A review of the facts that gave rise to that litigation is necessary to resolve the current motion.

Shaklee markets a variety of health foods, cosmetics and house cleaning products through direct sales or door-to-door solicitation. The Gunnells were Shaklee distributors until 1978 when Shaklee terminated their distributorship for allegedly making untrue statements about Shaklee, its products, and its founder, Dr. Shaklee to fellow distributors. The alleged statements were to the effect that Shaklee products were not as represented by the company and that Shaklee and its founder were a hoax and a fraud. Shortly after the Gunnells' termination Shaklee brought suit for product disparagement, trade libel and unfair competition. The Gunnells raised the affirmative defense that the alleged statements concerning Shaklee were true and additionally filed counterclaims for wrongful termination, antitrust violations, trade libel and intentional infliction of emotional distress.

After a five week trial the jury found for Shaklee and the trial judge found for the Gunnells on the contract termination claim. Both parties appealed and the case was reversed and remanded. *Shaklee v. Gunnell,* 748 F.2d 548 (10th Cir.1984).

The appellate court found that defendants did not receive a fair trial because of an erroneous denial of discovery. During the pretrial stages of the case the court limited discovery related to the integrity of Shaklee and its products to two narrow subject areas. However at trial Shaklee was allowed to introduce evidence beyond the limited discovery previously allowed. In particular plaintiff was allowed to introduce evidence concerning the qualifications of Shaklee's officers and as to whether Shaklee was a "hoax", "fraud", "sham", or lacked integrity. Because defendants were not allowed discovery to rebut this presentation, which went directly to the issue of whether defendants' statements were libelous the appellate court remanded for further discovery proceedings.

### II. THIS MOTION

The instant motion involves the privilege against compelled disclosure of source material by a reporter under Article I, section 2(b) of the California Constitution and California Evidence Code section 1070 (the California "shield law"). The issue appears to be one of first impression: whether unpublished documents obtained by a reporter from a third party which are partially quoted in a news story fall within the privilege.

In an attempt to gain further discovery as to whether Shaklee was a "hoax" or "fraud" defendants obtained a subpoena duces tecum pursuant to Federal Rule of Civil Procedure 45 for the deposition of

Victor Zonana, a business reporter for the Los Angeles Times (Times). The subpoena called for Zonana to produce a memorandum he quoted in an article entitled "The Old Regime Is Back at Shaklee" published in the Times on January 26, 1986. The memorandum concerns the founder of Shaklee and the alleged illegality of Shaklee's health products and was purportedly authored by Gary Shansby, the former Chief Executive Officer of Shaklee. Zonana served timely objections to the subpoena. On April 7, 1986 Zonana appeared for deposition and testified that the memorandum exists and that he quoted from it accurately, but he refused to produce the actual memorandum, relying on the privilege against disclosure under California law and under the First Amendment. Defendants have tried unsuccessfully to obtain the document from Shaklee and Shansby; both parties deny that the memorandum exists.

We will now address the validity of Zonana's claim of privilege. The parties have briefed the privilege issue under California law and under the First Amendment to the United States Constitution. However, we need not discuss the First Amendment issue because only the state law of privilege is applicable.

█ Under Federal Rule of Evidence 501 a federal court must apply the state law of privilege where state law supplies the rule of decision. Where, as here, state and federal claims are joined, but the evidence affects only the state claims the state law of privilege applies. *Eckmann v. Board of Education of Hawthorne School Dist. No. 197*, 106 F.R.D. 70, 72 (E.D.Mo. 1985). In a foreign deposition proceeding the privilege of the state in which the deposition is taken applies. *Ibid.; Roberts v. Carrier Corp.*, 107 F.R.D. 678 (N.D.Ind. 1985). Thus California law of privilege applies in this proceeding.

We now turn to the issue of whether the claim of privilege under California law is valid.

Under Article I, section 2(b) of the California Constitution a reporter may not be held in contempt "for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public ..." Unpublished information is defined to include "information not disseminated to the public by the person from whom disclosure is sought, whether or not related information has been disseminated and includes, but is not limited to, all notes, outtakes, photographs, tapes or other data of whatever sort not itself disseminated to the public through a medium of communication, whether or not published information based upon or related to such material has been disseminated." [1]

█ Defendants argue that the Shansby memorandum does not come within the constitutional provision quoted above because the document was not written by or addressed to the reporter but was a third party document obtained by the reporter. The specific language of the section on which defendants rely defines "unpublished information" as including "but not limited to notes, outtakes, photographs, tapes, or other data of whatever sort ..." Defendants claim that the four listed items are all reporter generated and that the general language "other data of whatever sort ..." should also be limited to reporter generated material. In support of this argument defendants rely on the principle of statutory construction that where general words follow a specific listing of a particular class of things, the general words will be presumed to be of the same general nature as those enumerated. *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 25 Cal.3d 317, 331 n. 10, 158 Cal.Rptr. 370, 599 P.2d 676 (1979). Our reading of the constitutional provision and a review of the relevant Cali-

---

1. This provision was enacted in 1980 and is nearly identical to California Evidence Code section 1070 as amended in 1974.

fornia authorities does not support defendants' interpretation. Initially we note that the enumerated examples are not explicitly limited to materials generated by the reporter. Further, when the entire constitutional provision is read as a whole we conclude that such a qualification was not intended. We note the explicit provision that a reporter may not be held in contempt for refusing to disclose any unpublished information *"obtained or prepared"* (emphasis added) in the newsgathering process. If only documents generated by the reporter were intended to be within the scope of the privilege the word "obtained" would have little or no meaning. A fundamental rule of statutory construction is that every word or phrase employed is presumed to be intended to have meaning and perform a useful function. *Clements v. T.R. Bechtel Co.*, 43 Cal.2d 227, 233, 273 P.2d 5 (1954). A construction rendering some words useless should be avoided. Thus upon a full reading of the provision we conclude that third party documents may fall within the protection of Article I, section 2(b) of the California Constitution.

This conclusion is in keeping with the broad interpretation given to the reporter's privilege by the California courts. See *Playboy Enterprises, Inc. v. Superior Court*, 154 Cal.App.3d 14, 201 Cal.Rptr. 207 (1984) [legislative history reflects strong state interest in providing highest possible level of protection from compelled disclosure]; *Hammarley v. Superior Court*, 89 Cal.App.3d 388, 153 Cal.Rptr. 608 (1979) [statute to be given broad interpretation to further statutory purpose of maintaining free flow of information].

Next defendant argues that the memorandum was in fact published in that it was specifically identified and quoted verbatim in the Times article and thus it is not protected by the reporter's privilege. This argument was disposed of in the *Playboy* case. In that case a subpoena duces tecum was served upon a reporter commanding the production of notes, tapes and records of an interview from which an article was written and published. The materials were sought for the purpose of verifying the accuracy of statements attributed to the person interviewed. The court found that the privilege extended to the physical records that constituted the reporter's source material even though those records had been quoted verbatim. Accordingly the court decided that only if the physical source itself was published could the reporter be compelled to disclose it. Thus under this authority the Times reporter cannot be compelled to turn over the memorandum itself even though it was quoted verbatim.

Defendants suggest that we should not follow the *Playboy* decision because it is merely an intermediate appellate court decision and the court in *CBS, Inc. v. Superior Court*, 85 Cal.App.3d 241, 149 Cal.Rptr. 421 (1978) has reached a different conclusion. In that case the court compelled a reporter to produce video and audio tapes where the sources were already made known and a substantial amount of the material had been publicly disseminated. The court found that production of "outtakes" would merely confirm or at worst amplify what had already been revealed. We find however that the *Playboy* decision reflects the current status of California law on the reporter's privilege in civil cases. We note that the *Playboy* opinion was rendered after the reporter's privilege was adopted as a constitutional provision while the *CBS* case involved only a statutory privilege. Furthermore the *CBS* case involved the countervailing interest of a criminal defendant in securing a fair trial, an interest not present in this case or in *Playboy*. The *Playboy* court specifically held that a civil litigant's interest in obtaining full discovery does not overcome the reporter's constitutional privilege against compelled disclosure. *Playboy, supra,* 154 Cal.App.3d at pp. 25–28, 201 Cal.Rptr. 207.

In conclusion, we find that the reporter's privilege contained in Article I, section 2(b)

prevents disclosure of the memorandum which defendants seek.[2]

### ORDER

Having considered the memoranda and arguments in support and in opposition to Defendants' Motion to Compel Production of Documents and good cause appearing therefore,

IT IS HEREBY ORDERED:

2. Since contempt is generally the only effective way to ensure a non-party witness' compliance with an order for production the California constitutional provision is in effect an absolute bar

Defendants' Motion to Compel Production of Documents is DENIED.

IT IS SO ORDERED.

to compelled production. *Playboy, supra,* 154 Cal.App.3d at p. 26, 201 Cal.Rptr. 207; *Mitchell v. Superior Court,* 37 Cal.3d 268, 274, 208 Cal. Rptr. 152, 690 P.2d 625 (1984).