[Sac. No. 2600.   In Bank.—September 7, 1917.]

## W. F. HILL, Respondent, v. BOARD OF SUPERVISORS OF THE COUNTY OF BUTTE and R. P. HOLMES et al., as Members of said Board, Appellants.

INITIATIVE AND REFERENDUM—CONSTITUTIONAL LAW—APPLICABILITY OF REFERENDUM PROVISIONS TO COUNTY LEGISLATION—MANDAMUS.— A resolution of a county board of supervisors declaring the necessity for and authorizing the construction of a hall of records, and accepting plans and specifications for the erection of the same, is legislative in character, and where, after the passage of such a resolution, a proper petition is presented to the board requesting it to submit the resolution to a vote of the electors, under section 1 of article IV of the Constitution, the board may be compelled by *mandamus* to submit the question.

ID.—DIRECT LEGISLATION BY COUNTIES—CONSTITUTIONALITY OF ACT OF 1911 ENACTING SECTIONS 4058 AND 4021A OF THE POLITICAL CODE.— The act of the legislature of 1911 (Stats. 1911, p. 577), entitled, "An act to provide for direct legislation including the initiative, referendum and recall by electors in counties by adding two new sections to the Political Code, to be numbered section 4058 and section 4021a respectively," does not violate section 24 of article IV of the Constitution, which prescribes that every act shall embrace but one subject, which shall be expressed in its title.

APPEAL from a judgment of the Superior Court of Butte County.   W. T. O'Donnell, Judge.

The facts are stated in the opinion of the court.

Raymond A. Leonard, A. F. Jones, and George F. Jones, for Appellants.

Lon Bond, and J. R. Robinson, Jr., for Respondent.

HENSHAW, J.—The board of supervisors of the county of Butte passed its resolution declaring the necessity for the construction of a new hall of records in Butte County, for the purpose of keeping in a safe place the valuable records of the county and for relieving the congested condition of the courthouse.  By this resolution it accepted plans, specifications, strain-sheets, and working details submitted by an architect for the erection and construction of this building.  The clerk

of the board was directed forthwith to advertise for bids for the construction of the building in accordance with the plans and specifications. Within due time thereafter a petition was presented to the board legally sufficient in form and containing the requisite number of signatures of the electors of Butte County, requesting the board to reconsider its resolution and upon such reconsideration either to repeal it or submit it to a vote of the electors under the referendum. The board refusing to comply with either request, this action in mandate was instituted and determined by the superior court in favor of the petitioner. That court issued its peremptory writ of mandate, and from its judgment the board of supervisors has appealed.

Appellant board of supervisors first contends that the action which it has taken and proposes to take is not subject to the referendum under the law, founding its argument herein upon the indisputable propositions of fact that counties are parts of the political subdivisions of the state; that the duties of county officers are largely duties pertaining to the government of the state, and that to enable them to perform these duties the legislature required them to construct and maintain safe and suitable public buildings; that as these duties are in their nature state duties, the laws governing their performance are state laws. From this is drawn the conclusion that it was never intended that the people of a county could thus under the referendum interfere and thwart the policy of the state and its legislation evincing that policy. In this, it is argued, is found the distinction between the referendum as applicable to counties and as applicable to cities. It is conceded that this case has a close analogue in *Hopping* v. *City of Richmond,* 170 Cal. 605, [150 Pac. 977], but it is argued that as the Hopping case was addressed to the right of referendum in a case of a city, whose council desired to erect a city hall, it is not authority, owing to the reasons indicated, controlling the determination of the case at bar. Unfortunately, however, for appellants' argument, to sustain it would do violence to the express provisions of the Constitution. That Constitution, in section 1 of article IV, reserves to the people of the state the power of instituting legislation under the initiative and of repealing or affirming enactments of the state legislature under the referendum. These constitutional provisions have received careful analysis from this court in

Bank in the Hopping case, *supra.* The same article and section of the Constitution declare that "The initiative and referendum powers of the people are hereby further reserved to the electors of each county, city and county, city and town of the state, to be exercised under such procedure as may be provided by law. . . . This section is self-executing, but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of this section or the powers herein reserved." Touching these reserved powers, it may be noted that it is not at all singular that the people should reserve to themselves in matters of lesser magnitude—that is to say, in county and in municipal affairs—powers equal to those reserved in matters of greater magnitude—that of state legislation, and so the people have done. Next it is to be noted that the people have made no distinction nor effort to distinguish between those powers so reserved in the case of cities or towns and those reserved in the case of counties. Since the language of the reservation is the same as to each, it would be a strained, distorted, and unwarranted construction which held that the powers thus reserved in identical language may be distinguished and discriminated for or against in the case of any of these public agencies. And finally it is self-evident that the legislature itself could not abridge nor even hamper the exercise of those powers by any of the subordinate mandatories of the state—first, because the reservation being in the Constitution is not subject to such legislative abridgment, and, second, because the Constitution in terms declares that the legislature shall have no authority to limit or restrict the powers reserved.

That a resolution such as is here under consideration is legislative in character is conclusively established by the decision in the Hopping case, *supra.*

The legislature of 1911 proposed two amendments to the Constitution, one (article IV, section 1) providing for the initiative and referendum in state, county, and city affairs quotations from which have heretofore been given, and a recall of public officers. (Article XXIII, section 1.) Precisely as the constitutional amendment touching the initiative and referendum reserved the same rights and powers to the electors of counties, cities, and towns, so in the matter of the recall, this constitutional amendment provided that it should also be exercised by the electors of each county, city

and county, city and town of the state with reference to the elective officers thereof. Both amendments were declared in the Constitution itself to be self-executing. The same legislature adopted an act entitled "An act to provide for direct legislation, including the initiative, referendum and recall by electors in counties, by adding two new sections to the Political Code, to be numbered section 4058, and section 4021a respectively" (Stats. 1911, p. 577). Section 1 of this act thus placed upon the statute books declared that "A new section is hereby added to the Political Code, to be numbered section 4058, and to read as follows." This section set forth a scheme in detail for the exercise of the reserved powers of the initiative and the referendum. Section 2 of the same act of the legislature declared that "A new section is hereby added to the Political Code, to be numbered section 4021a, and to read as follows." Section 4021a made provision for the recall of any elective officer of any county or township or supervisorial district thereof, and provided in detail the method of such recall. Our Constitution (article IV, section 24) prescribes that "Every act shall embrace but one subject, which subject shall be expressed in its title." It is argued that the legislative enactment violates this plain mandate of the Constitution, for that in its title and in its body it deals with two entirely unrelated subject matters, namely, elections under the initiative and under the referendum provisions, which clearly have to do with legislation, and elections for the recall of officers, which matter has no bearing whatsoever upon legislation; and that notwithstanding that the general description in the title of the act declares that the act itself provides for "direct legislation," this legislative enactment cannot operate to transform the character of the recall so as to give it any of the attributes of legislation. If the foregoing is conceded to be sound, then the result contended for is inevitable—the whole act must fall. (Cooley's Constitutional Limitations, 7th ed., p. 211; Lewis' Sutherland on Statutory Construction, 2d ed., sec. 144. To the same effect are *State* v. *Ferguson*, 104 La. 249, [81 Am. St. Rep. 123, 28 South. 917]; *State* v. *Lancaster County*, 17 Neb. 87, [22 N. W. 228]; *Oxnard Beet Sugar Co.* v. *State*, 73 Neb. 57, [102 N. W. 80, 105 N. W. 716]; *Ritchie* v. *People*, 155 Ill. 98, [46 Am. St. Rep. 315, 29 L. R. A. 79,

40 N. E. 454] ; *Pioneer Irr. Dist.* v. *Bradbury,* 8 Idaho, 310, [101 Am. St. Rep. 201, 68 Pac. 295].)

The question thus presented is one not free from difficulty. Yet, for reasons to be given, we hold the act to be valid. Manifestly, if the title had declared that the act dealt with "elections governing" instead of "direct legislation," all of these objections to the act itself would fall to the ground. For it would be quite within the powers of the legislature by a single enactment to provide an elective scheme governing the operation of the initiative, the referendum and the recall, and in the body of the act this is in fact what the legislature did do. In the last analysis, therefore, the difficulty arises over an unhappy phrase of description found in the title to the act, namely, "direct legislation," and the question to be resolved is whether we shall permit that phrase to control to the destruction of the whole act. Says Sutherland (1 Statutory Construction, sec. 115), the courts "agree that whilst it is necessary to so expound this provision as to prevent the evils it was designed to remove, it is no less desirable to avoid the opposite extreme, the necessary effect of which would be to embarrass the legislature in the legitimate exercise of its powers, by compelling needless multiplication of separate acts as well as to introduce a perplexing uncertainty as to the validity of many important laws which must be daily acted upon." Says Cooley (Constitutional Limitations, p. 206) : ' If the act is not made to cover legislation incongruous in itself and which by no fair intendment can be considered as having a necessary or proper connection, a title in general terms will be good." And, finally, declares Sutherland (1 Sutherland on Statutory Construction, sec. 134) : "The general subject need not appear in the title, if it is clearly disclosed or readily inferred from the details expressed." We have, then, before us an act the body of which deals with elections. It was well within the power of the legislature to pass such an act. The subject—elections—is one. These new powers reserved by the people to themselves afford a reason as well as a justification for framing the machinery of these elections in a single act. There is nothing hostile nor even inharmonious in the matters treated of in the body of the act. The legislature was unfortunate merely in selecting for the title of the act a descriptive phrase which unduly circumscribed the legislation actually enacted. But

in this it committed no wrong which the constitutional mandate was designed to prevent, and for this reason we hold that the argument against the validity of the act is not well taken.

The judgment appealed from is therefore affirmed.

Sloss, J., Melvin, J., Shaw, J., Lawlor, J., and Angellotti, C. J., concurred.