[Civ. No. 15498. Second Dist., Div. Three. June 20, 1947.]

STANLEY C. DYE et al., Appellants, v. COUNCIL OF THE CITY OF COMPTON et al., Respondents.

O'Melveny & Myers, Pierce Works, Carson B. Hubbard, Frank P. Doherty and Frank W. Doherty for Appellants.

Ralph K. Pierson for Respondents.

THE COURT.—On January 23, 1946, petitioners and appellants, Stanley C. Dye and William H. Jenner, as "residents, qualified electors, and taxpayers of the City of Compton" commenced the instant proceedings in mandamus directed against the council of the city of Compton and its respective members (specifically named as parties respondent in the petition) to compel that legislative body either to (1) entirely repeal sections 62 and 98-E of Ordinance No. 595, or (2) submit the same to a vote of the qualified electors of the city of Compton under the referendum law; or to show cause why they had not done so. A demurrer to the petition was sustained by the trial court without leave to amend, the alternative writ discharged, the peremptory writ denied, and

judgment of dismissal entered, from which judgment petitioners bring this appeal.

The facts occasioning these proceedings are the following: On November 27, 1945, the council of the city of Compton duly and regularly enacted Ordinance No. 595. This ordinance amended section 62 of, and added six new sections, including section 98-E, to Ordinance No. 584, the omnibus license tax ordinance of the city. Section 62 imposed a two-cent license tax upon each motion picture theatre admission, and section 98-E imposed a like tax upon public dance hall admissions. The remaining sections imposed license taxes upon persons engaged in the following businesses: retail delivery, auctioneers, trailer courts, trailer rentals, refrigeration and air conditioning, and beauty parlor establishments.

On December 26, 1945, a referendary petition directed against the adoption of sections 62 and 98-E thereof, signed by the requisite number of qualified electors of the city and in the manner prescribed by law for such referendum proceedings, was filed with the city clerk. On January 4, 1946, she duly certified it. On January 8, 1946, this petition, together with its certification, was submitted to the council of the city of Compton. On January 15, 1946, the council, meeting in regular session, passed a resolution denying the petition on the ground that it "should have requested the repeal of the entire ordinance rather than just sections of the ordinance" and declaring that Ordinance No. 595 should "remain in full force and effect."

The question presented by this appeal is whether a section or part of a city ordinance, as distinguished from the whole thereof, is subject to the power of referendum under the Constitution and the statutory law of California, where the state referendum procedure has been incorporated into a city charter. We have not been directed to, nor have we found, any cases in this state on this point, and so far as we know this is a case of first impression.

The power of referendum originates in article IV, section 1 of our state Constitution. The first sentence of this section, which grants legislative power to the state Legislature, so far as pertinent, reads as follows: ". . . the people . . . also reserve the power, at their own option, to . . . reject any act, or section or part of any act, passed by the legislature." This section also provides that "[T]he initiative and referendum powers of the people are hereby further reserved to the electors of each county, city and county, city and town

of the state, to be exercised under such procedure as may be provided by law." The section closes with the following significant sentence: "This section is self-executing, but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of this section or the powers herein reserved."

Pursuant to this section of the Constitution the Legislature established by statute a procedure for the exercise of the power of referendum by the electors of a city. This procedure may now be found in sections 1770 through 1777 of the Elections Code. An examination of these sections discloses that they purport to make the procedure applicable to ordinances as a whole and not to sections or parts of ordinances. These sections are here applicable because the charter of the city of Compton provides that the laws of this state regarding the power of referendum are made a part of the charter and that all actions with reference thereto shall be taken in accordance with those laws save for an exception not here material. (Stats. 1925, p. 1243.)

The fundamental issue between the parties to these proceedings is whether article IV, section 1, of our Constitution extends the power of referendum held by the electors of a city to sections and to parts of ordinances. Respondents contend that this power does not so extend. The first reason advanced is that the section makes no specific provision therefor, in contrast to the specific provision in the first paragraph with respect to such portions of the acts of the Legislature. Appellants reply that the extension is made by reasonable implication. We agree. It has long been settled in this state that the constitutional power of referendum possessed by the electors of a city is identical in character with that reserved in the Constitution by the people of the state. (*Hopping* v. *Council of City of Richmond*, 170 Cal. 605, 609 [150 P. 977]; *Chase* v. *Kalber*, 28 Cal.App. 561, 568 [153 P. 397]; cf. *Galvin* v. *Board of Supervisors*, 195 Cal. 686, 689-690 [235 P. 450].) While it is true that both the Hopping and Chase cases were concerned with the question as to what constitutes legislative power and not with the extent of the power of referendum otherwise, their declaration of the identity in constitutional power should be followed here. What is identical in character should be, within its limits, identical in scope. Under article I, section 2, of our Constitution all governmental power, legislative or other-

wise, is derived from the people. The power of referendum is one of the legislative powers specifically reserved by the people in their grant of general legislative power to the legislative bodies representing them. The reservation of legislative power to be exercised by referendum has reference to legislative, as distinguished from administrative and ministerial acts, whether of the state legislature, city council or other legislative body. (*Hopping* v. *Council of City of Richmond, supra*; *Dwyer* v. *City Council*, 200 Cal. 505, 511 [253 P. 932]; *Chase* v. *Kalber, supra*, 567.) The section does not admit of the construction that the constitutional reservation of the power of referendum to the electors of a city is any less extensive in any particular than the same constitutional reservation in favor of the people of the state. The Constitution plainly says that it is the referendum power of the people which is further reserved to the electors of a city. The construction urged by respondents does violence to this plain language. Accordingly, we hold that the constitutional power possessed by the electors of a city extends not only to ordinances and other legislative acts, however denominated, as a whole, but also to sections and parts of those ordinances and acts.

 A further contention is made that the Elections Code makes no provision for a referendum directed against a section or part of a city ordinance. The question presented for decision thus becomes whether the sections of the Elections Code (read literally) prescribing the procedure for the exercise of the power of referendum or the constitutional reservation of that power shall prevail. Specifically the claim appears to be that a section of an ordinance may not be attacked by referendum for the reason that the procedure provided by the Elections Code applies only to entire ordinances. The Constitution is the fundamental and supreme law of this state as to all matters within its scope (*Ex parte Braun*, 141 Cal. 204, 211 [74 P. 780]). The constitutional reservation is self-executing by its own terms. It has been held that legislative enactments for the purpose of facilitating the operation of a self-executing provision of the Constitution should be liberally construed in order that the constitutional power may not be defeated. (*Chester* v. *Hall*, 55 Cal.App. 611, 617 [204 P. 237].) But here it is unnecessary to rest our decision solely upon the principle just stated for the Constitution itself spells out exactly both the function and the effect of statutes passed pursuant to the particu-

lar section involved. ▆▆ According to the express terms of the Constitution the only function of the applicable sections of the Elections Code is to facilitate the operation of the constitutional power of referendum; and such facilitating legislation may in no way limit or restrict that power. This constitutional limitation upon the effect of these particular statutes now before us had long been recognized. (*Minges* v. *Board of Trustees,* 27 Cal.App. 15, 21 [148 P. 816]; *Hill* v. *Board of Supervisors,* 176 Cal. 84, 86 [167 P. 514].)

Moreover our courts have frequently stated that, in order to protect the constitutional power of referendum, statutory provisions dealing with it are always to be liberally construed in favor of the power. (*Whittemore* v. *Seydel,* 74 Cal.App.2d 109, 115 [168 P.2d 212]; *Knowlton* v. *Hezmalhalch,* 32 Cal. App.2d 419, 434 [89 P.2d 1109]; *Ley* v. *Dominguez,* 212 Cal. 587, 593 [299 P. 713].) We believe that these sections of the Elections Code should be interpreted so as to avoid conflict with the Constitution. (*County of Los Angeles* v. *Riley,* 6 Cal.2d 625, 629 [59 P.2d 139].) They are not the source of the referendum power and they cannot be construed as attempting to do what they cannot validly do, that is, prevent the exercise of the constitutional power of referendum to the full extent provided in the Constitution. They provide adequate procedure for the exercise of the constitutional power of electors of cities. They should be construed as applicable to the exercise of the full powers reserved to the people.

▆▆ The contention advanced by respondents that to permit the exercise of the power of referendum against but two sections of an ordinance would result in untold confusion is without merit. To deny the right would require that an attack be made upon an entire ordinance in order to reach a single severable and obnoxious provision, and would result in far greater confusion. The various sections of this general amendment to the omnibus license tax ordinance of the city are not interdependent but severable. Each deals with a separate license tax, is complete in itself, and could have been enacted as a separate ordinance. The two particular sections against which the referendary petition is directed, dealing respectively with license taxes upon motion picture theatre admissions and public dance hall admissions, are definite, clear, and capable of being understood and intelligently voted upon by the electors. With the exception of these two sections Ordinance No. 595 has long since become

effective and has passed beyond the reach of the power of referendum. The general referendum procedure has been adopted by the Compton charter as applicable to referendum elections and it must be held to be the appropriate procedure to be followed in all instances in which the electors seek to exercise the power of referendum reserved to them by the Constitution. Since an attack upon the two sections in question was authorized it was the duty of the city council to call the election for the repeal of those sections and to proceed as in the case of a petition directed against an entire ordinance.

We conclude, therefore, that the peremptory writ should issue as prayed for and that respondents should either repeal the two sections against which the referendum is directed or submit them to a vote of the qualified electors of the city of Compton pursuant to the referendum sections of the Elections Code, and it is so ordered.

Respondents' petition for a hearing by the Supreme Court was denied August 14, 1947.