[No. C004316. Third Dist. May 21, 1990.]

MIDWAY ORCHARDS, Plaintiff and Appellant, v.
COUNTY OF BUTTE et al., Defendants and Appellants;
CITY OF CHICO, Intervener and Respondent.

[No. C003276. Third Dist. May 21, 1990.]

COUNTY OF BUTTE, Plaintiff and Appellant, v.
MIDWAY ORCHARDS et al., Defendants and Appellants;
CITY OF CHICO, Real Party in Interest and Respondent.

**[Opinion certified for partial publication.*]**

*See footnote 1, *post*, page 769.

COUNSEL

Rutan & Tucker, Leonard A. Hampel, Philip D. Kohn and Karen Bush for Plaintiff and Appellant in No. C004316 and for Defendants and Appellants in No. C003276.

Susan Roff, County Counsel, Remy & Thomas, Michael H. Remy, James G. Moose and Robert G. Boehm, City Attorney, for Defendants and Appellants and Intervener and Respondent in No. C004316 and for Plaintiff and Appellant and Real Party in Interest and Respondent in No. C003276.

OPINION

SIMS, J.—In this opinion we decide two related appeals which have been consolidated at the request of one of the parties.

Both appeals involve unsuccessful attempts by Midway Orchards and Southfork Developers (collectively Midway) to develop for residential purposes a 110-acre almond orchard located about 2 miles outside the City of Chico (City).

In an unpublished portion of the opinion,[1] we first consider appeal No. C004316. There, we reject Midway's attack on a 1982 amendment to the Butte County General Plan (General Plan) that restricted Midway's orchard property to agricultural uses by placing it outside a "greenline" defining the outer limit of urban development in the City.

We next consider appeal No. C003276. This appeal concerns attempts in 1984 by the Butte County Board of Supervisors (Board) to allow Midway to develop its property by amending the general plan and applicable zoning

---

[1] Pursuant to rule 976.1 of the California Rules of Court, all portions of this opinion shall be published except part I (Appeal No. C004316), and part II(B)(1): "The Referendum Petition Was Valid."

ordinance and by entering into a development agreement pursuant to article 2.5 of division 1 of title 7 of the Government Code (§§ 65864-65869.5). The Board's attempts to amend the general plan and zoning ordinance were greeted by a citizens' referendum petition. In an unpublished portion of the opinion we conclude the form of the referendum petition was lawful.

Midway contends the trial court erred in ruling the development agreement was invalid. However, we shall affirm the trial court's conclusion the development agreement was not lawfully approved because it was never consistent with the general plan as required by law. In reaching this conclusion, we fashion a remedy to govern a referendum challenging a Board resolution amending a general plan, because the Legislature has failed to provide any rules or procedures governing a referendum challenging such a resolution. This remedy is therefore necessary to secure the right of referendum granted by our state Constitution.

I. *Appeal No. C004316 (Butte County Superior Court No. 78957)*

. . . . . . . . . . . . . . . . . . . . .*

II. *Appeal No. C003276 (Butte County Superior Court No. 89095)*

A. *Factual and Procedural Background*

Sometime in 1982, Midway applied to the Board for permission to withdraw Midway Orchards from a land conservation agreement under the Williamson Act (a necessary first step toward development of the land) in order to turn it into a 110-unit residential subdivision after all planning and zoning designations had been changed to allow such development.

On *October 30, 1984,* the Board performed four acts in response to Midway's application: (a) certification of an environmental impact report (EIR) prepared for the project; (2) adoption of resolution No. 84-174, amending the county general plan to change the land-use designation for the property from "Orchard and Field Crops" to "Agricultural-Residential"; (3) adoption of ordinance No. 2437, rezoning the property from "A-2 (General)" to "PUD (Planned Unit Development)"; (4) approval of a tentative subdivision map. Resolution No. 84-174 specified no effective date.

In response to these acts, citizens of Butte County (County) circulated a referendum petition demanding the repeal of resolution No. 84-174 and ordinance No. 2437 or submission of both acts to the voters.

---

* See footnote, *ante,* page 769.

On *November 27, 1984* (28 days after the passage of resolution No. 84-174 and ordinance No. 2437), the Board enacted ordinance No. 2445, which approved a proposed development agreement between the Board and Midway, found it to be consistent with the General Plan, authorized the chairman of the Board to execute it, and instructed the clerk of the Board to record it following its execution.

On *December 4, 1984,* the chairman of the Board and Midway executed the development agreement.

On *December 10, 1984,* the County clerk certified that the referendum petition had been filed, but did not specify the date of filing.[17]

■ ■■■ ■■■ On *December 13, 1984,* the county's chief administrative officer informed the Board that due to the referendum petition the Board was legally required either to repeal resolution No. 84-174 and ordinance No. 2437 and rescind the approval of the tentative subdivision map or to hold an election. The Board chose the former course:

On *January 15, 1985,* it repealed ordinance No. 2437 (the zoning amendment).

On *February 12, 1985,* it repealed ordinance No. 2445 (the approval of the development agreement).

On *June 4, 1985* it enacted resolution No. 85-92 superseding the attempted general plan amendment.

Thereafter, the County filed this action for declaratory relief seeking a declaration that the development agreement never became operative and therefore vested no rights in Midway.

Pursuant to section 437c, subdivision (f) of the Code of Civil Procedure, Midway sought summary adjudication of two issues: (1) that the referendum petition was invalid and (2) that resolution No. 84-174, amending the General Plan, was effective upon its passage.

The trial court granted Midway's motion in part and denied it in part. On the first issue, the court held the referendum petition was invalid in form. On the second issue, the court held that a resolution amending a general

---

[17]Midway attempts to argue for the first time in its reply brief that the record contains no evidence the petition was validly certified by the County clerk. An argument raised for the first time in a reply brief may not be considered on appeal. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 496, p. 484.)

plan, unlike resolutions in general, does not take effect until 30 days after its passage. In this court, the County challenges the first part of this order while Midway challenges the second part.

The County then moved for summary judgment on the issue of the Board's authority to enact ordinance No. 2445 (approving the development agreement) less than 30 days after the adoption of the General Plan amendment. Midway also filed a motion for summary judgment on this issue.

The trial court granted summary judgment to the County (i.e., holding the Board's approval of the development agreement was invalid because ultra vires). The trial court reasoned that since the General Plan amendment was not effective when the ordinance approving the development agreement was passed on November 27, the development agreement was not consistent with the General Plan as required by Government Code section 65867.5.[18]

Midway and the County filed timely notices of appeal.

In an unpublished portion of the opinion we shall conclude the trial court erred in ruling the referendum petition was invalid in form. However, we shall further conclude the trial court correctly determined the resolution amending the General Plan was subject to referendum and, as a consequence, did not go into effect until 30 days after its passage. Since the referendum petition was filed before the resolution was effective, and since the petition stayed the effect of the resolution, the resolution never took effect before superseding legislation was enacted by the Board. Consequently, the development agreement was never consistent with the General Plan as required by Government Code section 65867.5.

B. *Discussion*

1. *The Referendum Petition Was Valid.**

. . . . . . . . . . . . . . . . . . . . .

---

[18]Government Code section 65867.5 provides in pertinent part: "A development agreement shall not be approved unless the legislative body finds that the provisions of the agreement are consistent with the general plan and any applicable specific plan."

* See footnote, *ante,* page 769.

## 2. *Because the Referendum Petition Was Valid, the General Plan Amendment Necessary to the Approval of the Development Agreement Never Took Effect.*

Midway contends it has vested development rights as a consequence of its development agreement.[21] The trial court concluded that since the resolution amending the general plan was subject to referendum, the resolution was not effective for a period of 30 days after its passage to allow a referendum petition to be filed. The trial court reasoned that because of the delay in effectiveness, the development agreement was not consistent with the general plan when the Board enacted its ordinance approving the agreement. In order to show why the trial court's conclusion is correct, we will first expose a contretemps in the law and then provide a remedy for it. The contretemps is as follows:

■ It is settled that the adoption or amendment of a general plan is a legislative act subject to referendum. (*Yost* v. *Thomas* (1984) 36 Cal.3d 561, 570 [205 Cal.Rptr. 801, 685 P.2d 1152]; *Duran* v. *Cassidy* (1972) 28 Cal.App.3d 574, 584 [104 Cal.Rptr. 793]; *O'Loane* v. *O'Rourke* (1965) 231 Cal.App.2d 774, 783-785 [42 Cal.Rptr. 283].) Although a legislative act ordinarily may be undertaken by a local governmental entity either by resolution or ordinance (*Crowe* v. *Boyle* (1920) 184 Cal. 117, 149 [193 P. 111]), Government Code section 65356 provides in pertinent part, "The legislative body shall adopt or amend a general plan *by resolution, . . .*" (Italics added.)

However, the Legislature has failed to provide procedures by which a resolution adopting or amending a general plan may be subject to referendum. Thus, the statutory scheme enacted by the Legislature generally governing county referenda (Elec. Code, §§ 3750-3755.5) speaks exclusively of ordinances and fails to mention resolutions at all. (Unspecified statutory references are to the Elections Code.) For example, section 3753 provides in pertinent part: "If a petition protesting against the adoption of an ordinance is presented to the board of supervisors prior to the effective date of *the ordinance, the ordinance* shall be suspended and the supervisors shall reconsider *the ordinance.*" (Italics added.) Section 3751[22] effectively provides that

---

[21] Since no party has questioned the constitutionality of the statutory scheme authorizing development agreements, either on its face or as applied here, we do not comment on the question. Rather, we assume the statutory scheme is constitutional.

[22] Section 3751 provides: "(a) Except an ordinance granting a franchise, the following ordinances shall take effect immediately:

"(1) Those calling or otherwise relating to an election.

"(2) Those specifically required by law to take immediate effect.

"(3) Those fixing the amount of money to be raised by taxation or the rate of taxes to be levied.

*ordinances* subject to referendum shall not become effective for 30 days from the date of passage in order to allow a referendum petition to be filed. (see *Kuhs* v. *Superior Court* (1988) 201 Cal.App.3d 966 [247 Cal.Rptr. 544]; see also Gov. Code, § 25123.) The statutory scheme simply fails to mention how a legislative act accomplished by resolution may be subject to referendum.[23]

The Elections Code sections at issue should be liberally construed in favor of the power of referendum. (*Dye* v. *Council of the City of Compton* (1947) 80 Cal.App.2d 486, 490 [182 P.2d 623].) In *Dye*, for example, provisions of the Elections Code authorizing a referendum with respect to municipal ordinances were construed to authorize a referendum challenging only *sections* of certain ordinances. (*Id.* at pp. 490-491.)

■ However, the power of courts to construe statutes is not unbounded. "We may not . . . rewrite the statute to conform to an inferred intention that does not appear from its language. [Citations.]" (*Mills* v. *Superior Court* (1986) 42 Cal.3d 951, 957 [232 Cal.Rptr. 141, 728 P.2d 211]; see *In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 734, fn. 15 [199 Cal.Rptr. 697].) ■ We cannot in good conscience say that "ordinance" means the same thing as "resolution" in light of the well-established differences between the two modes of enacting legislation. ■ " 'The resolution of a board of supervisors is ordinarily not equivalent to an ordinance. A resolution is usually a mere declaration with respect to future purpose or proceedings of the board. An ordinance is a local law which is adopted with all the legal formality of a statute.' (*McPherson* v. *Richards* (1933) 134 Cal.App. 462, 466 [25 P.2d 534]. See *Housing Authority* v. *Superior Court* (1950) 35 Cal.2d 550, 558-559 [219 P.2d 457]; 5 McQuillin, Municipal Corporations (1969 rev. vol.) §§ 15.02-15.08, pp. 42-66; 37 Am.Jur., Municipal Corporations, § 142, pp. 754-755.) A resolution adopted without the 'formality' required of an ordinance cannot be deemed an ordinance. (5 McQuillin, *op. cit. supra*, § 15.02, pp. 46-47.) A duly enacted county ordinance is a 'law of this State' within the meaning of a penal statute proscribing the violation of such law (*In re Groves* (1960) 54 Cal.2d 154, 158 [4 Cal.Rptr. 844, 351 P.2d 1028]; *County of Plumas* v. *Wheeler* (1906) 149 Cal. 758, 768 [87 P. 909]); a board resolution is not.

---

"(4) Those for the immediate preservation of the public peace, health, or safety. The ordinances referred to in this subdivision shall contain a declaration of the facts constituting the necessity and shall be passed by a four-fifths vote of the board of supervisors.

"(b) All other ordinances, including ordinances granting a franchise, shall become effective 30 days from and after the date of final passage."

[23] The statutes regulating municipal referenda similarly refer exclusively to ordinances. (See §§ 4050-4061.)

"The Legislature has been explicit concerning this distinction. It has exacted certain 'formalities' in the enactment of an ordinance by the supervisors of a county ([Gov. Code,] §§ 25120-25121), but not of their adoption of a resolution. It has specified certain requirements relative to the publication of a county ordinance after its passage ([Gov. Code,] §§ 50021, 25124), its deferred effective date in the typical case ([Gov. Code,] § 25123), its mandatory recording in an 'ordinance book' ([Gov. Code,] §§ 25102, subd. (b), 25122); compare [Gov. Code,] § 25102.1, as to the recording of resolutions, and the codification of ordinances generally ([Gov. Code,] §§ 25126-25130, 50022.2-50022.5); none of these requirements apply to board resolutions. By statute, the Legislature has made the terms 'ordinance' and 'resolution' synonymous in a very few instances, each of which is highly specialized and applies to a city only (Gov. Code, § 60004; Sts. & Hy. Code, §§ 8007, 8305); in innumerable other statutes authorizing or directing actions by county boards of supervisors, it has been careful to state whether the specific action shall be taken by 'ordinance' or by 'resolution' in each case. It has emphasized the distinction between the two terms by further providing that, when a statute requires local legislative action by resolution but a local charter requires that it be taken by ordinance, 'action by ordinance is compliance with the statute for all purposes (§ 50020); it has made no converse statutory provision to the effect that a 'resolution' will suffice, where a statute requires action by 'ordinance,' under any circumstances.

"Because the difference between a 'resolution' and an 'ordinance' is thus substantive, under case law and by deliberate legislative definition, the one . . . cannot be construed as having amounted to the other . . . ." (*City of Sausalito* v. *County of Marin* (1970) 12 Cal.App.3d 550, 565-566 [90 Cal.Rptr. 843], fn. omitted.)

It is therefore apparent that the Elections Code makes no provision for referenda aimed at legislative acts accomplished by resolution.

We are aware that the Legislature has occasionally established special referenda procedures to be used to challenge certain legislative acts accomplished by resolution. Thus, for example, Water Code section 31609[24]

---

[24] Water Code section 31609 provides: "If a petition protesting against the adoption of the resolution declaring the improvement district to be formed is presented to the board prior to its effective date, the resolution shall be suspended and the board shall reconsider it. The petition shall be signed by not less than 10 percent of the registered voters within the proposed improvement district on the date of adoption of said resolution. If the board does not repeal the resolution against which a petition is filed, the board shall submit the resolution to the voters within such improvement district at a regular election or a special election for the purpose. The resolution shall not become effective unless and until a majority of the voters vote in favor thereof. Such election shall be conducted in the manner provided in Article 3 (commencing at Section 31405) of Chapter 2 of Part 6 of this division insofar as applicable, except

specially authorizes a referendum with respect to a resolution forming an improvement district. Public Utilities Code section 13104[25] specially authorizes a referendum with respect to a resolution of a municipal utility district issuing bonds for electric system improvements.[26] And Military and Veterans Code section 1257[27] specially authorizes a referendum with respect to a resolution annexing territory to a memorial district.

Are we to infer from these isolated enactments that the Legislature has intended to insulate from referendum all other legislative acts accomplished by resolution? We will not draw the inference because, as we shall explain, it cannot be reconciled with the right of referendum granted by our state Constitution. ■ Statutes are to be read together with the Constitution and, if reasonably possible, given a meaning consistent with constitutional requirements. (*County of Los Angeles* v. *Legg* (1936) 5 Cal.2d 349, 353 [55 P.2d 206].)

The power of referendum was established in the California Constitution by amendment of article IV section 1 in 1911 (hereafter 1911 amendment). (See *Associated Home Builders, etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473 [92 A.L.R.3d 1038].) The 1911 amendment provided in pertinent part as follows: " '[T]he people reserve to themselves the power to propose laws and amendments to the Constitution, and to adopt or reject the same, at the polls independent of

---

that if a majority of the votes cast at said election are in favor of the resolution then the cost of such election shall be borne by the improvement district. This section shall not apply to any improvement district containing less than 100 registered voters as of the date of adoption of the resolution referred to in Section 31596."

[25] Public Utilities Code section 13104 provides: "Upon any such resolution taking effect subject to the right of referendum, pursuant to this article, the board shall cause the same to be published in the manner provided for the publication of notices. At any time within 60 days after the date of the second such publication a referendary petition, signed by voters in number equal to at least 3 percent of the total vote cast, as defined in Section 11507, demanding the submission of such resolution to a vote of the voters of the district for their assent to the issuance of the proposed bonds, may be filed with the secretary. Upon presentation to the secretary of a referendary petition, the resolution which is the subject thereof shall be of no effect unless and until it has been assented to by the voters."

[26] See also Public Utilities Code section 13377, authorizing an identical referendum procedure with respect to a resolution authorizing the issuance of bonds to incur short-term indebtedness.

[27] Military and Veterans Code section 1257 provides: "If, at the close of the hearing, the board of supervisors determines to annex the territory, or any portion thereof, it shall so declare by resolution. The annexation shall be effective upon the date of the adoption of the resolution unless one percent or more of the voters living within the territory to be annexed have at or prior to hearing filed written objections to the annexation. If written objections to the proposed annexation are made by the number of voters specified in this section, the annexation shall not be effective until it is approved by a majority vote of the voters of the territory proposed to be annexed. The election shall be conducted substantially as provided in Sections 1179, 1180, and 1181."

the Legislature, and also reserve the power, at their own option, to so adopt or reject any act, or section or part of any act, passed by the Legislature. . . . [¶] The initiative and referendum powers of the people are hereby further reserved to the electors of each county, city and county, city and town of the State to be exercised under such procedure as may be provided by law. . . . *This section is self-executing, but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of this section or the powers herein reserved.'*" (Deering's Const. Ann., Cal. Const., art. IV, § 22 and foll., italics added.)

The 1911 amendment was held to be self-executing by its own terms. (*Geiger* v. *Board of Supervisors* (1957) 48 Cal.2d 832, 837 [313 P.2d 545]; *Dye* v. *Council of the City of Compton, supra,* 80 Cal.App.2d at p. 490.) The powers reserved to the citizens of the state were held identical to the powers reserved to the citizens of cities, towns and counties. (*Hill* v. *Board of Supervisors* (1917) 176 Cal. 84, 86 [167 P. 514].) With respect to the power of the Legislature to enact facilitating statutes under the amendment, ". . . the Constitution itself spells out exactly both the function and the effect of statutes passed pursuant to the particular section involved. According to the express terms of the Constitution the only function of the applicable sections of the Elections Code is to facilitate the operation of the constitutional power of referendum; and such facilitating legislation may in no way limit or restrict that power." (*Dye* v. *Council of the City of Compton, supra,* 80 Cal.App.2d at pp. 490-491; see *Hill* v. *Board of Supervisors, supra,* 176 Cal. at p. 86.) Finally, under the 1911 amendment it was recognized that "if a legislative act is . . . done, the referendum may be invoked whether the measure is denominated an ordinance or resolution." (*Hopping* v. *Council of City of Richmond* (1915) 170 Cal. 605, 611 [150 P. 977]; see 38 Cal.Jur.3d, Initiative and Referendum, § 4, p. 374.)

In 1966, the state Constitution was revised, and the current language regulating referenda was adopted.[28] ■ However, except for a change in the effective date of a state statute challenged by referendum but approved by the voters, the 1966 revision effected no substantive change. (*Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638, 654 [180 Cal.Rptr. 297, 639 P.2d 939]; *Associated Home Builders, etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d at p. 595, fn. 12; *Ortiz* v. *Board of Supervisors* (1980) 107 Cal.App.3d 866, 871

---

[28]Thus, article IV, section 1 now provides in relevant part, ". . . the people reserve to themselves the powers of initiative and referendum." Article II, section 9, subdivision (a) states, "The referendum is the power of the electors to approve or reject statutes or parts of statutes except urgency statutes, statutes calling elections, and statutes providing for tax levies or appropriations for usual current expenses of the State." Article II, section 11 states, "Initiative and referendum powers may be exercised by the electors of each city or county under procedures that the Legislature shall provide. This section does not affect a city having a charter."

[166 Cal.Rptr. 100].) Thus, the constitutional provision remains self-executing,[29] so that the power of referendum may be exercised even in the absence of facilitating legislation. (See *Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco* (1973) 8 Cal.3d 942, 946 [106 Cal.Rptr. 643, 506 P.2d 1019]; *Rose* v. *State of California* (1942) 19 Cal.2d 713, 720. [123 P.2d 505].) Moreover, "Legislation authorized by article II, section 11 . . . to facilitate the exercise of the referendum may not limit or restrict the referendum." (*Ortiz, supra,* 107 Cal.App.3d at p. 871.)

█ It is therefore clear that the Legislature cannot deny citizens the constitutional right of referendum with respect to legislative acts accomplished by resolution by failing to enact legislation prescribing procedures for exercise of the right. █ "[A] right constitutionally granted cannot be taken away by the failure of the legislature to act." (*Rose* v. *State of California, supra,* 19 Cal.2d at p. 725.) It is not within the legislative power, either by silence or direct enactment, to modify, curtail, or abridge a self-executing grant of constitutional power. (*Western Assn. etc. R.R.* v. *Railroad Comm.* (1916) 173 Cal. 802, 804 [162 P. 391, 1 A.L.R. 1455]; see *Flood* v. *Riggs* (1978) 80 Cal.App.3d 138, 154 [145 Cal.Rptr. 573]; *Hewlett-Packard Co.* v. *County of Santa Clara* (1975) 50 Cal.App.3d 74, 81 [123 Cal.Rptr. 195].) The only viable questions are whether the courts are empowered to remedy the failure of the Legislature to provide procedures for referenda attacking legislative acts accomplished by resolution and, if so, what the appropriate procedures should be.

█ We have no doubt the courts are empowered to remedy the legislative lacuna. Code of Civil Procedure section 187 grants the courts "all the means necessary" to the exercise of their jurisdiction. (See also Civ. Code, § 3523; 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, §§ 3-6, pp. 34-38.) █ Moreover, "[A] denial of constitutionally protected rights demands judicial protection, . . ." (*Reynolds* v. *Sims* (1964) 377 U.S. 533, 566 [12 L.Ed.2d 506, 84 S.Ct. 1362] [12 L.Ed.2d 506, 530].) The courts are empowered to fashion a remedy for deprivation of a constitutional right to suit the needs of the case. (*In re Pfeiffer* (1968) 264 Cal.App.2d 470, 477 [70 Cal.Rptr. 831].) If the courts do not act here, the Legislature's failure will effectively nullify the people's constitutional right of referendum, a right characterized as " 'one of the most precious rights of our democratic pro-

[29] "As a general rule, a directive to the Legislature to implement a constitutional provision is an expression of intent that the provision not be self-executing, as the language of the provision is addressed to the Legislature rather than to the courts." (*People* v. *Vega-Hernandez* (1986) 179 Cal.App.3d 1084, 1092 [225 Cal.Rptr. 209]; see *Leger* v. *Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1454 [249 Cal.Rptr. 688].) Here, however, the express language of the 1911 amendment leaves no doubt that the people intended the power of referendum could be exercised without regard to facilitating legislation. (*Dye* v. *Council of the City of Compton, supra,* 80 Cal.App.2d at p. 491.)

cess.'" (*Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d at p. 591, quoting *Mervynne* v. *Acker* (1961) 189 Cal.App.2d 558, 563 [11 Cal.Rptr. 340].) A denial of the right by the Legislature would be particularly inappropriate since the power of referendum guarantees to the citizens an ultimate check on legislative power.

■ Moreover, the courts have not hesitated to resort to their inherent equitable power to fashion appropriate remedies where necessary to guarantee to citizens their constitutionally protected rights. (See, e.g., *Crawford* v. *Board of Education* (1976) 17 Cal.3d 280, 307 [130 Cal.Rptr. 724, 551 P.2d 28].) Historically, these powers have included the fashioning of state legislative districts (*Reynolds* v. *Sims, supra,* 377 U.S. at pp. 586-587 [12 L.Ed.2d at p. 542]) and the formulation of school desegregation plans. (*Crawford, supra,* 17 Cal.3d at p. 307.) Indeed, "When a school district fails to fulfill its state constitutional obligations [respecting desegregation], we retain our power to compel, for example, school closure, school site selection, creation of special 'magnet schools,' curriculum changes, and other steps to overcome the adverse effects of school segregation." (*McKinny* v. *Board of Trustees* (1982) 31 Cal.3d 79, 93 [181 Cal.Rptr. 549, 642 P.2d 460], fn. omitted.) We think the election remedies we adopt today are frankly mild by comparison to those described above.

This leaves the question: where the Legislature has failed to act, what procedures should be fashioned to guarantee the right of referendum with respect to legislative acts of a county undertaken by resolution? We think the obvious answer is to use the same procedures as are already established for ordinances in sections 3750 through 3755.5. That solution insures a desirable uniformity in the referendum process.

■ But does this mean, as the trial court concluded, that resolutions subject to referendum, like ordinances, are not effective until 30 days from the date of their enactment? The nature of the power of referendum says that in the absence of a statute specifying to the contrary, the answer must be "yes."

Preliminarily, we note that no statute says when a resolution amending a general plan is effective. Midway concedes there is no statute of general application decreeing when a resolution becomes effective. Midway argues Government Code section 65862[30] compels the conclusion a resolution

---

[30]Government Code section 65862 provides: "When inconsistency between the general plan and zoning arises as a result of adoption of or amendment to a general plan, or any element thereof, hearings held pursuant to Section 65854 or 65856 for the purpose of bringing zoning into consistency with the general plan, as required by Section 65860, may be held at the same time as hearings held for the purpose of adopting or amending a general plan, or

effecting a general plan amendment takes effect immediately. However, that section merely provides for concurrent hearings on zoning changes and general plan amendments. It does not expressly or impliedly provide that a resolution amending a general plan shall be immediately effective.

While it is true that resolutions ordinarily take effect immediately, the reason is nearly always traceable to court-made law:[31] "The ordinary rule is that legislative enactments become operative upon their passage, unless there is some express provision of law to the contrary." (*Gay* v. *Engebretson* (1910) 158 Cal. 21, 26 [109 P. 876].) The rule of *Gay* is not controlling here because it was adopted before the 1911 amendment and therefore without regard to the power of referendum. As we shall explain, the power of referendum requires that, in the absence of a statute specifying to the contrary, the "ordinary rule" of *Gay* be discarded with respect to resolutions constituting legislative acts subject to referendum.[32]

The immediate effectiveness rule of *Gay* would allow resolutions subject to referendum to have an effective, useful, potent life in the period between their enactment and the filing of a referendum petition.[33] Indeed, that effectiveness is precisely the basis of Midway's claim to vested rights in this case. However, that effectiveness is incompatible with the power of referendum. ▪ The power of referendum is simply *not* the power to *repeal* a legislative act. Under the 1911 amendment, the power was to " 'adopt or reject any act, or section or part of any act, passed by the Legislature.' " (See *ante,* at p. 777.) Under current article II, section 9, " 'The referendum

any element thereof. However, the hearing on the general plan amendment may, at the discretion of the local agency, be concluded prior to any consideration of adoption of a zoning change.

"It is the intent of the Legislature, in enacting this section, that local agencies shall, to the extent possible, concurrently process applications for general plan amendments and zoning changes which are needed to permit development so as to expedite processing of such applications."

[31] The Legislature has occasionally prescribed when resolutions shall be effective. Thus, for example, Health and Safety Code section 35487 provides in pertinent part that a resolution authorizing a temporary housing project "shall be deemed to be administrative in character and shall take effect immediately . . . ." Streets and Highways Code section 1704 provides that where a county by resolution relinquishes a county highway to become a city street, the road shall cease to be a county highway 10 days after the filing of the resolution. These statutes are obviously inapplicable here. As we shall explain *post,* where the Legislature has authorized a special referendum with respect to a resolution, it has prescribed a deferred effective date of the resolution.

[32] Our comments should not be construed as applicable to the special referenda discussed *ante* at page 775 and *post* at page 780. As we explain, these schemes all allow for the exercise of the power of referendum before the challenged resolution is given practical effect. We imply no criticism of these legislative schemes.

[33] Midway does not contend a resolution would remain effective following the filing of a referendum petition.

is the power of the electors to approve or reject statutes. . . .' " The power is the same as the Legislature's approval of a bill. (*Assembly* v. *Deukmejian, supra,* 30 Cal.3d at p. 656.) The power is to determine whether a legislative act should *become* law. (*Ibid.*) It is not to determine whether a legislative act, once effective, should be repealed.

 In accord with this view of the referendum power, neither state statutes nor local ordinances subject to referendum go into effect during the time permitted for the filing of a referendum petition. (See Cal. Const., art. IV, § 8, subd. (c); § 3751; *Busch* v. *Turner* (1945) 26 Cal.2d 817, 823 [161 P.2d 456, 171 A.L.R. 1063]; *Norlund* v. *Thorpe* (1973) 34 Cal.App.3d 672, 675 [110 Cal.Rptr. 246].) Thus, "A prime purpose of deferment of the effective date of ordinances is to preserve the right of referendum." (*Norlund, supra,* at p. 675.)

Similarly, where the Legislature has specially provided for a referendum with respect to a resolution, it has insured the resolution will have no practical effect during the time allowed for pursuing a referendum. (See Wat. Code, § 31608 [resolution forming improvement district effective 30 days after adoption]; Mil. & Vet. Code, § 1257 [resolution annexing territory not effective until approved by voters where sufficient written objections presented]; Pub. Util. Code, § 13105 [preliminary resolution authorizing issuance of bonds "shall take full and final effect" only where no referendum petition filed or resolution has been approved by voters]; Pub. Util. Code, § 13378 [same].)

It is clear that a rule allowing for the immediate effectiveness of all resolutions would nullify the power of referendum in some cases. Thus, for example, referenda have been pursued against resolutions of local agencies authorizing the acquisition of land (see, e.g., *Hopping* v. *Council of City of Richmond, supra,* 170 Cal. at p. 618; *Reagan* v. *City of Sausalito* (1962) 210 Cal.App.2d 618, 624 [26 Cal.Rptr. 775]; *Knowlton* v. *Hezmalhach* (1939) 32 Cal.App.2d 419, 424-425 [89 P.2d 1109]) or authorizing execution of a lease (*Martin* v. *Smith* (1959) 176 Cal.App.2d 115 [1 Cal.Rptr. 307]). If the land were acquired or the lease executed upon the authority of the resolution during the period of its effectiveness, and before the filing of a referendum petition, we do not see how the transaction would be nullified if the effect of the resolution were later stayed by the filing of a referendum petition and ultimately repealed by popular vote.

 We therefore conclude the legislative power of referendum reserved to the people in our Constitution does not countenance that a legisla-

tive act subject to referendum can be effective before the power of referendum can be exercised. This conclusion was reached by the court in *County of San Mateo* v. *Bartole* (1960) 184 Cal.App.2d 422, 429 [7 Cal.Rptr. 569], although the conclusion was admittedly unnecessary to the court's resolution of the case.

We emphasize that not all resolutions are subject to this rule of delayed effectiveness; the rule applies only to those resolutions constituting legislative acts subject to referendum where the Legislature has failed to specify a referendum procedure.[34] Thus, for example, many administrative acts not subject to referendum are undertaken by resolution. (See, e.g., Health & Saf. Code, § 35487; *Housing Authority* v. *Superior Court* (1950) 35 Cal.2d 550 [219 P.2d 457].) These resolutions continue to be effective upon passage according to the ordinary rule.

In this case, the resolution amending the general plan was passed on October 30 and was not effective until November 30. (*Kuhs* v. *Superior Court, supra,* 201 Cal.App.3d at p. 974.)

■ At oral argument, Midway contended the record does not show when the referendum petition was filed or "presented to the board of supervisors prior to the effective date of the [resolution]" (§ 3753) in order to stay the effective date of the resolution.[35] However, this lack of evidence[36] does not aid Midway. The record shows the referendum petition was treated as lawful by the County clerk, who certified the petition to the board of supervisors,[37] and by the Board itself, which repealed the subject resolution upon the advice of its chief administrative officer that the referendum peti-

---

[34] In this case, we have no occasion to determine whether in appropriate circumstances resolutions can qualify as "urgency statutes" exempt from referendum under article II, section 9, subdivision (a) of our Constitution. As we have recounted, the resolution at issue is subject to referendum. (*Yost* v. *Thomas, supra,* 36 Cal.3d at p. 570.)

[35] Cases have held a referendum petition is "presented" to a legislative body when the petition is filed with the clerk of that body. (See *Committee for Sewer Referendum* v. *Humboldt Bay Wastewater Authority* (1978) 77 Cal.App.3d 117, 122 [143 Cal.Rptr. 463]; *Knowlton* v. *Hezmalhalch, supra,* 32 Cal.App.2d 419, 429-430.)

[36] On the motion for summary judgment, Midway's counsel filed a declaration stating, "During my attendance of the public hearing by the Butte County Board of Supervisors on November 27, 1984, relating to the Development Agreement, no member of the Board or County official or employee declared that a reference [*sic*] petition had been *presented* to the County protesting the Board's prior adoption of a general plan amendment and a rezoning for my client's real property." Even assuming for the sake of argument this declaration raises a triable issue of fact with respect to whether the referendum petition was filed on or before November 27, it raises no triable issue with respect to whether the petition was timely filed on November 28 or 29. (See *Kuhs* v. *Superior Court, supra,* 201 Cal.App.3d at p. 974.)

[37] See former section 3707 (Stats. 1976, ch. 248, § 3, p. 488.)

tion was lawful. In the absence of evidence showing the contrary, we must presume that the referendum petition was timely "presented" to the Board, because, "It is presumed that official duty has been regularly performed." (Evid. Code, § 664; see, e.g., *Bringle* v. *Board of Supervisors* (1960) 54 Cal.2d 86, 89 [4 Cal.Rptr. 493, 351 P.2d 765] [board of supervisors presumed to have acted lawfully in granting zoning variance]; *Kachadoorian* v. *Calwa County Water Dist.* (1979) 96 Cal.App.3d 741, 746 [158 Cal.Rptr. 223] [county clerk presumed to have given required notice to freeholders in district prior to hearing on abandonment of alley]; *Brown* v. *City Council* (1930) 103 Cal.App. 113, 115 [284 P. 254] [city clerk's certificate in absence of evidence, conclusive as to whether person circulating petition actually saw the appended signatures written].)

Consequently, at some point before the resolution became effective we must presume the referendum petition was "presented to the board of supervisors" and stayed the effectiveness of the resolution (§ 3753; *Assembly* v. *Deukmejian, supra,* 30 Cal.3d at p. 654) until the resolution was superseded by a subsequent resolution on June 4, 1985. The resolution which would have provided consistency between Midway's development agreement and the general plan was therefore never effective. Consequently, Midway's development agreement was never consistent with the general plan as required by Government Code section 65867.5 and the Board was without legal authority to approve the agreement. (See fn. 18, *ante.*)

The development agreement was therefore unlawfully approved and executed. A contract entered into by a local government without legal authority is "wholly void," ultra vires, and unenforceable. (*Dynamic Ind. Co.* v. *City of Long Beach* (1958) 159 Cal.App.2d 294, 299-300 [323 P.2d 768]; *City of Oakland* v. *Key System* (1944) 64 Cal.App.2d 427, 441 [149 P.2d 195].) Such a "contract" can create no vested rights. Therefore, Midway can claim no right to develop its property based on a development agreement void from the beginning.

The trial court correctly concluded the development agreement gave Midway no vested rights.

## DISPOSITION

In appeal No. C004316, the judgment is affirmed in all respects. The County of Butte and the City of Chico shall recover their costs on appeal.

In appeal No. C003276, the judgment is reversed insofar as it holds the referendum petition invalid. In all other respects the judgment is affirmed. The County of Butte shall recover its costs on appeal.

Carr, Acting P. J., and Sparks, J., concurred.

The petition of appellants Midway Orchards for review by the Supreme Court was denied August 1, 1990.